930 So.2d 756 (2006)
Frederick FISHER and Carolina Fisher, Appellants,
v.
CERTAIN INTERESTED UNDERWRITERS AT LLOYDS SUBSCRIBING TO CONTRACT # 242/99, Appellee.
No. 4D04-4425.
District Court of Appeal of Florida, Fourth District.
May 10, 2006.
Rehearing Denied July 10, 2006.
*757 Raymond T. Elligett, Jr., of Schropp, Buell & Elligett, P.A., Tampa and Bob G. Freemon of Bob G. Freemon, P.A., Tampa, for appellants.
Robert C. Groelle and Roland V. Bernal of Groelle & Salmon, P.A., Wellington, for appellee.
MAY, J.
Homeowners appeal a final judgment denying them insurance coverage for damage to their personal property. They argue the trial court erred in determining the mold damage to their personal property was not a direct physical loss caused by the discharge of water thereby depriving them of insurance coverage for that loss. They further argue the trial court erred in requiring them to repay monies tendered by the insurer for future additional living expenses and depreciation. We agree with the homeowners that the policy covers the mold damage sustained to their personal property. However, we agree with the insurer that it is entitled to recoup monies it conditionally paid for additional living expenses and depreciation. We therefore reverse in part and affirm in part.
The homeowners had an insurance policy underwritten by Lloyds that covered both their dwelling and personal property. The dwelling coverage, Coverage A, was "all-risk" coverage. The personal property coverage, Coverage C, was "named peril" coverage.
*758 The insuring language of the latter coverage provided:
We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I  EXCLUSIONS.
. . . .
12. Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance[.]
(Emphasis added.) The exclusions referred to in Section I do not apply.
After a month-long vacation, the homeowners returned home to discover that a water pipe had leaked under the foundation. The insurer denied coverage for damage to personal property that did not have direct contact with the discharged water.
The homeowners argued to the trial court that the "all-risk" coverage for the dwelling under Coverage A also applied to Coverage C, thereby providing coverage for the mold damage to their personal property because it was not expressly excluded. The insurer responded that the two coverage sections had to be read independently of one another. The trial court ruled in favor of the insurer and denied the homeowners coverage for the mold damage to their personal property.
On appeal, the homeowners and the insurer maintain their respective positions. On this first point, we agree with the insurer. Whether there is coverage for the personal property rests on the provisions of Coverage C for personal property; not with a distorted reading of Coverage A for dwelling coverage. See Poulton v. State Farm Fire and Cas. Cos., 267 Neb. 569, 675 N.W.2d 665 (2004).
In Poulton, the Nebraska Supreme Court distinguished all-risks coverage and named-perils coverage by describing an all-risks policy as "provid[ing] coverage for all direct losses not otherwise excluded," while conversely, a named-perils policy covers only those stated perils named as included. When both types of coverage appear in different sections of a single insurance policy, as with Lloyds, the reader cannot intermingle the terms. See N.H. Ins. Co. v. Carter, 359 So.2d 52 (Fla. 1st DCA 1978).
There can be no doubt that Coverage C  personal property applies to the homeowners' claim for mold damage to their personal property. Whether that provision provides coverage for the mold damage sustained is a more difficult issue. The specific provision requires that the damage be a "direct physical loss" caused by a "named peril." In this case, the mold damage resulted from the discharge of water  a named peril. The real question we must answer is whether this damage is a "direct physical loss" or merely a consequence of the named peril. Our reading of Coverage C, in light of case law interpreting similar provisions, leads us to conclude there is coverage for the mold damage to the homeowners' personal property in this case.
Courts must construe insurance contracts "in accordance with the plain language of the policy." Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 735 (Fla.2002). Furthermore,
[w]hen possible, courts should give effect to each provision of a written instrument in order to ascertain the true meaning of the instrument. Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that *759 relies on negation of some of the contractual provisions.
Id. at 739 (quoting Inter-Active Servs., Inc. v. Heathrow Master Ass'n, 721 So.2d 433, 435 (Fla. 5th DCA 1998)).
In Fred Meyer, Inc. v. Central Mutual Insurance Co., 235 F.Supp. 540 (D.Or. 1964), the United States District Court for the District of Oregon concluded that perishable food spoiled after hurricane force winds knocked out the power to refrigerators was a "direct loss." It considered opinions from the Minnesota and Oregon courts that had interpreted the words "proximate," "immediate," and "direct" as synonymous. The court held "that the loss before [it] was a `Direct Loss by Windstorm' within the meaning of the Direct Damage Insurers' policies" because the power loss was the direct result of the storm thereby making the food spoilage "a direct and natural consequence of the loss of the power." Id. at 543, 547.
In this case, no one disputes that the mold resulted from the discharge of water  a named peril. The question is whether the damage was "direct" or consequential. We hold that the mold damage in this case was a "direct" consequence of a named peril. The discharge of water set into motion a sequence of events proximately resulting in mold damage to the homeowner's personal property.
A proper definition of `direct loss' is loss proximately caused by the peril insured against, and the term `proximate cause' as applied in insurance cases has essentially the same meaning as it does in negligence cases, except that in insurance cases, the element of foreseeableness or anticipation of the injury as the result of the peril insured against is not required. . . . Thus, in a suit on a policy insuring for `direct loss' caused by the named peril, a proper definition of proximate cause would be that cause which in a natural and continuous sequence unbroken by any new and intervening cause, produces a loss, and without which the loss would not have occurred.
Fed. Ins. Co. v. Bock, 382 S.W.2d 305, 307 (Tex.Civ.App.1964) (citations and punctuation omitted).
We live in a day and age where mold is a damage commonly resulting from the discharge of water. It makes little sense to construe the policy so narrowly that the consequential mold damage from the discharge of water is not covered. To do so would require us to turn a blind eye to what common sense dictates. Had the insurer desired to exclude the damage for mold, it could easily have done so. We therefore reverse the trial court's judgment to the extent it denied coverage for mold damage to the homeowner's personal property.
In its judgment, the trial court also required the homeowners to repay the insurer for monies it tendered to the insured for future additional living expenses and depreciation awarded in the appraisal. The homeowners argue the payment was tantamount to a confession of judgment. We disagree.
In its cover letter forwarding the payment, the insurer clearly indicated that payment was made because of a recent decision of the United States District Court for the Middle District of Florida. Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 250 F.Supp.2d 1357 (M.D.Fla.2003), aff'd, 362 F.3d 1317 (11th Cir.2004). The insurer tendered this payment to avoid any claim for bad faith even though it disagreed with the court's decision. This did not prevent the insurer from asking the state trial court to rule on the issue of coverage for the homeowners' claim for future additional living expenses and depreciation. The trial court found *760 the claim was not covered and ordered the homeowners to return those funds. We find no error in the court's decision on this issue and affirm that part of the judgment requiring the homeowners to repay the insurer.
Affirmed in part and Reversed in part.
WARNER, J., and SWEET, GARY L., Associate Judge, concur.