TAYLOR, J.
 

 The Florida Insurance Guaranty Association (FIGA) appeals the trial court’s order confirming an appraisal award and entering final judgment for The Olympus Association, Inc. (Olympus). Because the trial court erred in awarding final judgment for Olympus without first determining FIGA’s liability as to contested coverage claims, we reverse.
 

 In April 2005, Southern Family Insurance Company (Southern Family) issued a property insurance policy to Olympus, a condominium association in Hallendale, Florida. The policy period ran from April 29, 2005 until April 29, 2006, and provided coverage for hurricanes.
 

 On October 24, 2005, Hurricane Wilma caused substantial damage to the Olympus
 
 *793
 
 community, resulting in building damage in excess of $8.4 million. Olympus made a claim to Southern Family for insurance benefits under the policy.
 

 On April 25, 2006, Southern Family was placed in receivership for liquidation purposes, and pursuant to section 631.041(1), Florida Statutes, all actions against the company were stayed. Southern Family’s insolvency triggered FIGA’s obligation, under section 631.57, Florida Statutes, to pay for “covered claims.”
 

 Olympus’s public adjuster, Joseph Zevu-loni, demanded an appraisal for Buildings 500, 600, and 2500. The policy’s provision for appraisal states as follows:
 

 2. Appraisal
 

 If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
 

 a. Pay its chosen appraiser; and
 

 b. Bear the other expenses of the appraisal and umpire equally.
 

 If there is an appraisal, we will still retain our right to deny the claim.
 

 Tony Allogia was the appraiser for FIGA, and Michelle L. Antinucci was appointed as the Umpire. On May 30, 2008, the Umpire submitted an Appraisal of Insurance Claim — Award Form (Appraisal Award) to the appraisers. Zevuloni signed it on May 31, 2008, making the award valid and binding. The Appraisal Award totaled $7,102,879.76; the amounts are as follows:
 

 500 Building $2,669,823.63
 

 600 Building $2,089,056.39
 

 2500 Building $2,343,999.74
 

 The Appraisal Award further stated:
 

 This award is made without consideration of other terms, conditions, provisions or exclusions of the above policy, which might affect coverage or the amount of the insurer’s liability there under. Any previous advance payments or deductible should be subtracted from the Appraisal Award amount.
 

 There was also a separate sheet indicating the line-item appraisal amounts for each building, which in part indicated that of the total amount, $3,785,000 was allotted for Waterproofing/Painting.
 

 Olympus filed a complaint against FIGA for breach of contract. FIGA responded with a motion to dismiss, which was denied. FIGA then filed an Answer and Defenses, as well as thirty-six affirmative defenses. The Second Affirmative Defense stated that “[pjursuant to the Policy, Form CP 01 25 06 95, painting or waterproofing material is not covered.” This policy provision, labeled “Windstorm Exterior Paint and Waterproofing Exclusion,” indicates that the policy does not cover loss or damage to paint or waterproofing material applied to the exterior of the buildings.
 

 Olympus filed a Motion to Confirm Appraisal Award and Entry of Final Judgment. The trial court heard the motion, entered an Order granting it, and entered Final Judgment allowing Olympus to recover from FIGA the sum of $7,102,879.76 in principal, less $2,550,545.78 in building deductibles and a $100.00 FIGA deductible, for a total amount of $4,552,233.98.
 

 FIGA appeals the trial court’s order awarding Olympus $4,552,233.98, contend
 
 *794
 
 ing that the trial court erred in failing to determine FIGA’s liability with regard to the contested claim and entering final judgment in an amount equal to the entire appraisal amount. Because this issue involves the trial court’s application of law to facts, the standard of review is
 
 de novo. See Amerus Life Ins. Co. v. Lait,
 
 2 So.3d 203, 205 (Fla.2009).
 

 FIGA was created in part to “[p]ro-vide a mechanism for the payment of
 
 covered claims
 
 under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer.” § 631.51(1), Fla. Stat. (2008) (emphasis added). But “the full gamut of a defunct insurance company’s liabilities was not intended to be shifted onto FIGA.”
 
 Williams v. Fla. Ins. Guar. Ass’n, Inc.,
 
 549 So.2d 253, 254 (Fla. 5th DCA 1989). A “covered claim” is “an unpaid claim, including one of the unearned premiums, which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer, if such insurer becomes an insolvent insurer.” § 631.54(3), Fla. Stat. (2008).
 

 Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits.
 
 First Floridian Auto & Home Ins. Co. v. Myrick,
 
 969 So.2d 1121, 1125 (Fla. 2d DCA 2007). Issues relating to coverage challenges are questions exclusively for the judiciary.
 
 State Farm Fire & Cas. Co. v. Licea,
 
 685 So.2d 1285, 1287 (Fla.1996). However, “ ‘when the insurer admits that there
 
 is
 
 a covered loss, but there is a disagreement on the
 
 amount
 
 of loss, it is for the appraisers to arrive at the amount to be paid.’ ”
 
 Johnson v. Nationwide Mut. Ins. Co.,
 
 828 So.2d 1021, 1025 (Fla.2002) (quoting
 
 Gonzalez v. State Farm Fire & Cas. Co.,
 
 805 So.2d 814, 816-17 (Fla. 3d DCA 2000)).
 

 In
 
 Licea,
 
 the Florida Supreme Court decided the issue of whether an appraisal clause that stated “ ‘[o]ur request for an appraisal or examination shall not waive any of our rights’ ” was void for lack of mutuality. The Liceas’ home was damaged by Hurricane Andrew, and there was a dispute as to the amount of damages. 685 So.2d at 1286. Because the appraisers were unable to agree, an umpire was selected.
 
 Id.
 
 The Liceas argued that the parties were not equally bound because of this clause; thus it was void for lack of mutuality.
 
 Id.
 
 The court stated as follows:
 

 Thus, where there is a demand for an appraisal under the policy, the only “defenses” which remain for the insurer to assert áre that there is no coverage under the policy for the loss as a whole or that there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate. We interpret the appraisal clause to require an assessment of the amount of a loss. This necessarily includes determinations as to the cost of repair or replacement and whether or not the requirement for a repair or replacement was caused by a covered peril or a cause not covered, such as normal wear and tear, dry rot, or various other designated, excluded causes.
 

 Id.
 
 at 1288. The court held the appraisal clause was not void for lack of mutuality due to the retention of rights, “where we interpret the clause as retaining only the right to dispute the issues of coverage as to the whole loss, or whether the policy conditions have been violated.”
 
 Id.
 

 In
 
 Three Palms Pointe, Inc. v. State Farm Fire & Casualty Co.,
 
 362 F.3d 1317, 1319 (11th Cir.2004), the Eleventh Circuit relied on
 
 Licea
 
 to hold that an insurer was limited to challenging coverage for the
 
 *795
 
 “loss as a whole” once an appraisal award had been made. In
 
 Three Palms Pointe,
 
 a condominium association sought confirmation of an appraisal award that determined the amount of the association’s loss under the property insurance policy, including costs of relocating residents while the condominium property was undergoing structural repairs.
 
 Id.
 
 at 1318. State Farm refused to pay the relocation costs, claiming that these expenses were not covered by its policy.
 
 Id.
 
 It appealed the district court’s summary judgment entered in favor of the association.
 
 Id.
 
 The Eleventh Circuit affirmed the summary judgment, holding that, under
 
 Licea,
 
 State Farm was not permitted to dispute coverage as to a portion of the claim after a binding appraisal award; it could only dispute coverage for the entire claim.
 
 Id.
 
 at 1319.
 

 However, state courts that are construing and interpreting state law are not bound by the decisions of federal courts.
 
 Liberty Am. Ins. Co. v. Kennedy,
 
 890 So.2d 539, 541 (Fla. 2d DCA 2005) (citing
 
 Int’l Ass’n of Bridge v. Blount Int’l, Ltd.,
 
 519 So.2d 1009, 1012 (Fla. 2d DCA 1987)). In
 
 Liberty American Insurance Co. v. Kennedy,
 
 890 So.2d 539, 541 (Fla. 2d DCA 2005), the second district determined that
 
 Three Palms Pointe
 
 misinterpreted
 
 Li-cea
 
 ’s holding. It explained, as discussed above, that
 
 Licea’s
 
 dispositive issue was whether the appraisal clause was void for lack of mutuality.
 
 Id.
 
 The court stated as follows:
 

 The
 
 [Licea
 
 ] court recognized that “coverage questions are outside the scope of ... appraisal proceedings” and established that there is a dichotomy between the issue of coverage and the issue of valuation of a covered loss.
 
 [Licea,
 
 685 So.2d at 1287.]
 
 A coverage issue may exist, of course, even where the insurer has not denied the claim as a whole. The issue of coverage is not necessarily a matter of all or nothing. The court in Licea did not consider the specific circumstance where the scope of coverage is disputed.
 
 The reference in
 
 Licea
 
 to an insured’s right to “dispute the issues of coverage as to the whole loss” was not necessary to the court’s holding that there was no lack of mutuality. To the extent that the reference to “whole loss” can be understood to limit an insured’s right to dispute the scope of coverage where a claim has been submitted to appraisal, it is dictum.
 

 Id.
 
 (emphasis added). The court concluded that “the submission of the claim to appraisal does not foreclose Liberty American from challenging
 
 an element of loss as not being covered by the policy.” Id.
 
 at 541-42 (emphasis added).
 

 Thus, the trial court erred by entering final judgment in favor of Olympus without first determining FIGA’s liability as to the coverage claims contested in its affirmative defenses. Although
 
 Li-cea
 
 made mention of challenging a “whole loss,” it is not reasonable to order an insurer to pay for all elements set forth by an appraiser if the insurer raises an issue of coverage as to only one element and not the whole claim.
 
 See Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Contract No. 242/99,
 
 930 So.2d 756, 759 (Fla. 4th DCA 2006) (stating, with regard to construing a policy too narrowly, that “[t]o do so would require us to turn a blind eye to what common sense dictates”). It is the appraiser’s duty to determine the amount of coverage, while questions of coverage liability are left for the judiciary.
 
 Licea,
 
 685 So.2d at 1287. Then, “[i]f a court decides that coverage exists, the dollar value agreed upon by the appraisal process will be binding upon both parties.”
 
 Id.
 
 at 1287-88.
 

 Our holding in
 
 Fisher v. Certain Interested Underwriters at Lloyds Subscribing
 
 
 *796
 

 to Contract No. 242/99,
 
 930 So.2d 756, 759-60 (Fla. 4th DCA 2006), further supports FIGA’s contention that the trial court erred in not permitting it to contest one element of the coverage. In
 
 Fisher,
 
 the homeowners appealed, in part, the trial court’s order requiring them to repay money given to them by the insurer for future living expenses and depreciation, which was included in the appraisal award.
 
 Id.
 
 at 757, 759. The insurer tendered the money based on the holding in
 
 Three Palms Pointe,
 
 because, although it disagreed with that holding, it wanted to avoid any bad faith claims.
 
 Id.
 
 at 759. We held as follows:
 

 This did not prevent the insurer from asking the state trial court to rule on the issue of coverage for the homeowners’ claim for future additional living expenses and depreciation.
 
 The trial court found the claim was not covered and ordered the homeowners to return those funds. We
 
 find no error in the court’s decision on this issue
 
 and affirm that part of the judgment requiring the homeowners to repay the insurer.
 

 Id.
 
 at 759-60 (emphasis added). Thus, we decided that the insurer could contest coverage and liability as to only one element of the claim and appraisal award.
 

 Finally, in
 
 Sands on the Ocean Condominium Ass’n, Inc. v. QBE Insurance Corp.,
 
 No. 05-14362-CIV, 2009 WL 790120, at *2 (S.D.Fla. Mar. 24, 2009), the district court discussed
 
 Three Palms Pointe,
 
 but explained it was of “limited use” because in
 
 Sands,
 
 the appraisal contained a disclaimer stating that the award was “ ‘made without any consideration of the deductible amount or prior payments issued to the insured or any terms, conditions, provisions or exclusions’ of the insurance policy.... [Thus, the award] does not reflect the amount owed to Plaintiff under the policy.”
 
 Id.
 
 Similarly, here, the appraisal award form contained comparable language. The award stated that “[t]his award is made without consideration of other terms, conditions, provisions or exclusions of the above policy,
 
 which might affect coverage or the amount of the insurer’s liability there under.”
 
 The court also discussed
 
 Kennedy
 
 and stated that given
 
 Kennedy’s
 
 holding, “in conjunction with the language in this appraisal award, the Court finds that Defendant is entitled to challenge coverage as to portions of the appraisal award.”
 
 Id.
 
 at *3.
 

 Based on the above, we conclude that the trial court erred by entering final judgment in favor of Olympus and awarding it the amount set forth in the appraisal (less the deductibles), without first deciding the issue of coverage liability. When FIGA filed its affirmative defenses in response to Olympus’s complaint, the trial court should have first decided FIGA’s liability. As explained in
 
 Kennedy
 
 and supported by
 
 Fisher,
 
 FIGA could contest part of the liability without challenging coverage as a whole. The appraisal award itself indicated the amount could change as the award was made without consideration of the policy’s provisions of coverage.
 

 Accordingly, we reverse and remand for the trial court to determine FIGA’s liability with regard to the contested claims, and then enter the appropriate amount based on the appraisal.
 
 [1]
 

 Reversed and Remanded.
 

 CIKLIN, J, and BLANC, PETER D„ Associate Judge, concur.
 

 [1]
 

 . When an appraiser uses a line-item appraisal form, as was done here, "a court can
 
 *797
 
 readily identify any coverage issues that arise during the course of appraisal and resolve these without having to try and decipher what value the appraiser assigned for a particular type of damage.”
 
 Bonafonte v. Lexington Ins. Co.,
 
 No. 08-21062-CIV, 2008 WL 2705437, at *2 (S.D.Fla. July 9, 2008).