# IN THE SUPREME COURT OF IOWA

No. 16–0121

Filed June 1, 2018

**WALNUT CREEK TOWNHOME ASSOCIATION,**

Appellant,

vs.

**DEPOSITORS INSURANCE COMPANY,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Property insurer seeks further review of court of appeals decision that reversed district court judgment rejecting appraisal award. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Timothy D. Johnson of Roeder Smith Jadin, PLLC, Bloomington, Minnesota, and Anthony R. Epping of Epping Law Office, P.C., Des Moines, for appellant.

Jeff M. Margolin and Apryl M. DeLange of Hopkins and Huebner, P.C., Des Moines, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court erred by rejecting an insurance appraisal award for hail damage to roofing shingles. This case presents a question of first impression in Iowa that has divided the courts of other jurisdictions: whether the appraisers may determine the *cause* of the loss. The insured townhome association was already investigating a warranty claim against the manufacturer seeking replacement of allegedly defective shingles when the hailstorm occurred. The property insurer paid for damage to metal gutters and fascia but disputed whether the hail caused damage to the asphalt shingles and denied coverage based on the preexisting manufacturing defect. The Association sued the insurer for breach of contract and invoked the appraisal provision of the property insurance policy to ascertain the amount of the loss from the hailstorm. The appraisal panel considered conflicting expert opinions and, in a two-to-one decision, valued the hail-damage loss at approximately $1.4 million. The district court held a bench trial, rejected the appraisal award, found no shingle damage from hail, applied an exclusion for defective materials, and entered judgment in favor of the insurer. The Association appealed, and we transferred the case to the court of appeals.

The court of appeals held the district court erred by rejecting the appraisal award for shingle damage and remanded for entry of judgment on the appraisal award, excluding amounts for air conditioners not owned by the insured. A dissenting judge would have affirmed the district court judgment against the insured, concluding the district court was not bound by the appraiser's determination of the cause of the loss. We granted the insurer's application for further review.

We hold the district court erred by disregarding the appraisal award's determination of the amount of the loss for shingles damaged by the hailstorm. We are persuaded by the courts holding that appraisers may determine the factual cause of damage to insured property to ascertain the amount of the loss. Coverage questions, however, are to be resolved by the court. The appraisal did not address the extent of preexisting shingle damage excluded from coverage through the insurance policy's anticoncurrent-cause provision. That issue must be decided by the court on remand. We therefore vacate the decision of the court of appeals and remand the case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Walnut Creek Townhome Association (Walnut Creek or the Association) is a residential common interest community in Urbandale. The thirty-six multifamily buildings at Walnut Creek were built between 2004 and 2006. Walnut Creek is governed by a board of directors. In 2011, the board began investigating the need to replace the shingles on the roofs installed during the original construction. The type of shingle—New Horizon manufactured by CertainTeed—was regarded by roofing professionals to be defective.

Marcus Harbert, a professional roofer for Hedberg & Son Roofing, evaluated the life expectancy of the roofs in the spring or summer of 2011. He inspected the roofs of three buildings. Harbert observed "[c]racking, crazing of appliques,[1] [and] significant granule loss

---

[1]According to a professional engineer who testified for Depositors, "craze cracking" means "the cracks in the asphalt are meandering in different directions," and the phenomenon is "a result of . . . unreinforced asphalt shrinking as it weathers. And as it weathers and shrinks, the cracks form, and granules displace around them."

throughout the whole shingle itself." CertainTeed shingles carry a twenty-five-year warranty, but Harbert recommended to Mike Gooding, Hedberg's residential salesperson, that the shingles be replaced within five years. Gooding relayed this information to the Association's board. Minutes of the board meetings in 2011 and 2012 show the board was preparing to replace the roofs.

On August 8, 2012, a severe wind and hailstorm hit Walnut Creek. One resident described the hail as "pea size" and "dime size" and noted that it covered his entire deck. Within a week after the storm, Harbert inspected the roofs at Walnut Creek again, this time for hail damage. He concluded the hail impacts were not significant enough "to warrant calling for an insurance claim." However, Harbert recommended to Gooding that Walnut Creek follow through with the CertainTeed warranty claim.

In September, Walnut Creek asked Nicholas Waterman, a roofing renovator with GreenGuard Construction, to inspect the roofs for hail damage. Waterman found between eight to twelve hits per ten-by-ten-foot square and concluded that "[t]he roofing definitely had hail damage." Waterman testified that his standard practice was to ignore hits to the applique because damage to this area is "not accepted in the insurance-related field." He acknowledged that he will sometimes examine an area twice as large as the usual ten-by-ten-foot square to make up for the applique area that is ignored.

Walnut Creek is insured by Depositors Insurance Company (Depositors). The insurance policy provides,

---

An expert for Walnut Creek testified that the applique is "a second layer of granules . . . basically glued onto the base layer . . . [to] add[] a dimensional look to it."

**A. COVERAGES**

We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.

The policy defines "Specified Causes of Loss" to include a "windstorm or hail." The policy sets forth exclusions and limitations:

**3. COVERED CAUSES OF LOSS**

This Coverage Form insures against Risks Of Direct Physical Loss unless the loss is:

a. Excluded in Section B. EXCLUSIONS;

b. Limited in paragraph A.4. LIMITATIONS in this section; or

c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS.

The section on exclusions includes an anticoncurrent-cause provision which states,

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

The section continues, "2. We will not pay for loss or damage caused by or resulting from any of the following . . . [r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself."

The section on exclusions also provides,

3. We will not pay for loss or damage caused by or resulting from any of the following

. . . .

c. **Negligent Work.**

Faulty, inadequate, or defective:

. . . .

(2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;

(3) Materials used in repair, construction, renovation or remodeling . . . .

Walnut Creek submitted an insurance claim to Depositors, alleging that the August 8 storm caused damage to the roofs, gutters, siding, soffits, and air conditioning units and that the policy covered such damage. Depositors retained Haag Engineering to conduct a hail damage inspection. Two engineers—Robert Danielson and Richard Herzog—inspected the roofs on December 12 to 14. They prepared a report dated January 18, 2013. In the report, Danielson noted that there were nine hail events in the Urbandale area between 2006 and September 2012. The report concluded, "There was no hail-caused damage to shingles on the Walnut Creek Townhome Association property roofs."

Timothy Barthelemy, a public adjuster, assessed the buildings for Walnut Creek in 2013. Barthelemy observed nine to eleven hits per ten-by-ten-foot square. Barthelemy concluded that the hail caused damage to the buildings. Barthelemy inspected the roofs with a representative of Haag Engineering and Jason Johnson, the adjuster for Depositors.

On February 13, Depositors sent Walnut Creek a reservation-of-rights letter, noting its "investigation reveal[ed] no hail damage to the composition shingle roof covering of the subject buildings" at Walnut Creek. Depositors denied most of Walnut Creek's claim but payed Walnut Creek $124,656.79 for hail damage to the "soft metals" (such as the gutters, downspouts, and fascia).

Walnut Creek exercised its right to an appraisal under the parties' insurance policy. The policy provides,

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other, and will advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Walnut Creek and Depositors each named an appraiser, and their appraisers selected an umpire. Before the appraisal occurred, Walnut Creek filed a civil action against Depositors in district court for breach of contract and sought a declaratory judgment "that the appraisal award form specify the amount of the covered loss."

In July 2014, Walnut Creek filed a motion for summary judgment, requesting the court order an appraisal, "identify any issues of coverage or causation related to coverage issues or exclusions," and approve an appraisal award form. Depositors resisted and filed a cross-motion for partial summary judgment to dismiss Walnut Creek's declaratory judgment claim. After a hearing, the court denied Walnut Creek's motion for summary judgment. The court granted Depositors' cross-motion for partial summary judgment and dismissed Walnut Creek's claim for declaratory judgment. The court set the bench trial for April 27, 2015, but later continued the trial to May 27.

The appraisal took place on May 5, 2015. Depositors participated in the appraisal, subject to an explicit reservation of the right to

challenge coverage after completion of the appraisal. Walnut Creek selected James Pierce as its appraiser, while Depositor selected Eric Howell. Pierce and Howell selected Larry Roth as the umpire. Howell, a property adjuster, testified that he worked with Roth on one other appraisal when Roth served as the umpire. Howell testified that he approved Roth as the umpire because Howell believed Roth "would be bringing an independent engineer experienced in assessing hail damage to the inspection to consult with."

Roth did not bring an expert on hail damage to the appraisal. The appraisers inspected five buildings. Harbert, Waterman, Barthelemy, and Danielson all attended the appraisal. Harbert, who had inspected Walnut Creek's roofs again in the spring of that year, concluded that the roofs needed to be replaced solely because of the manufacturer's defect. Harbert mentioned the CertainTeed warranty, so the appraisal panel was aware of the Association's warranty option. Danielson presented to the appraisal panel his opinion that hail did not cause the damage to the shingles.

Waterman, however, took the position that "everything [they] were looking at was bona fide hail damage" and explained his opinion to the appraisers and umpire. Barthelemy agreed that the damage was caused by the August 8, 2012 storm. On May 5, the appraisers and umpire issued a written award. The appraisal award stated,

> The Appraisers and Umpire above-referenced hereby agree and stipulate that the appraisal herein is limited in scope to the amount of loss and damage as a result of a hail and windstorm that occurred on or about August 8, 2012. The award does not include an evaluation or determination of coverage, policy exclusions or the relative causation of the same.

The award continued,

> We, the undersigned, pursuant to our appointment, certify that we have truly, conscientiously and impartially performed the duties assigned us and have appraised and determined and do hereby award the following amount of loss. Minimum of two signatures required.

The appraisal award set the amount of loss at $1,467,830.[2]  Only Pierce and Roth signed the award; Howell did not sign because he disagreed with the final number.

Depositors disputed whether there was coverage for the loss, and the case proceeded to a bench trial, as scheduled.  At trial, Walnut Creek argued that Depositors breached the insurance contract by denying coverage for the damage caused to Walnut Creek's roofs by the August 8, 2012 wind and hailstorm.  Walnut Creek also sought a declaratory judgment enforcing the appraisal award.  Depositors claimed there was no breach of contract because the roof damage was due to multiple concurrent causes, and such damage is excluded from coverage by the policy's anticoncurrent-cause provision.  Depositors also argued that the air conditioning units included in the appraisal award were not covered because the units were owned by individual residents rather than the insured Association.  Depositors claimed the appraisal award is neither binding nor conclusive, and alternatively, if coverage existed, any liability should be reduced by the amount of any warranty negotiated with CertainTeed, the manufacturer of the defective shingles.

Waterman and Barthelemy testified for Walnut Creek.  Both acknowledged that the CertainTeed shingles were defective but

---

[2]This included the replacement cost of the air conditioners, which the court later determined did not belong to Walnut Creek and, therefore, were not covered by the policy.

concluded that there was hail damage to the roofs attributable to the August 8, 2012 storm.

Misty Benge, the property manager of Walnut Creek, testified that the board directed her to sign a warranty extension with CertainTeed. She executed the CertainTeed release on February 4, 2015. Benge also testified that, to her knowledge, Walnut Creek had not applied for the warranty yet and had not given her approval to do so.

Danielson and Harbert testified for Depositors. Danielson explained that when he inspected the roofs, the shingles "show[ed] signs of weathering, craze cracking in the applique portion, [and] granular loss in the applique portion," as well as "variations in the amount of granule loss in the . . . non-applique portion." Danielson testified that he found craze cracking on a majority of the shingles on the roofs at Walnut Creek. Danielson testified that he did not find any evidence of hail damage. When asked if pea-sized hail could cause hail damage to the shingles on the roofs at Walnut Creek, Danielson answered, "Absolutely not." He also testified that dime-sized hail would not cause damage to the shingles.

On August 19, the district court issued its findings of fact, conclusions of law, and judgment. The court concluded that Depositors did not breach the contract because the policy did not cover the damage to Walnut Creek's roofs. The court determined that the policy excludes coverage of the roof damage because (1) Walnut Creek did not prove the storm was the only cause of the physical damage to the roofs, (2) Walnut Creek did not disprove Depositors' contention that the shingles contained a product defect that triggered deterioration, and (3) the defective shingles were used in the construction of the townhomes even though the defect was well-known in the roofing industry.

The court also determined that the appraisal award was "neither binding nor conclusive upon the parties." The court relied on the factors set forth in the court of appeals decision in *North Glenn Homeowners Ass'n v. State Farm Fire & Casualty*, 854 N.W.2d 67, 71 (Iowa Ct. App. 2014) (Whether an appraisal is binding and conclusive depends "on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." (quoting *Quade v. Secura Ins.*, 814 N.W.2d 703, 707–08 (Minn. 2012))). The district court found that the damage to the shingles resulted from multiple concurrent causes, including the preexisting defect in the shingles; Walnut Creek was aware of the policy exclusions; and the appraisal, which was not signed by all parties, only addressed one of the causes of roof damage. The court concluded that Walnut Creek did not meet its burden of showing the appraisal award was binding and conclusive on the parties. The court denied Walnut Creek's breach of contract claim and claim for declaratory judgment.

Walnut Creek filed a motion for enlargement or amendment under Iowa Rule of Civil Procedure 1.904(2) and for a new trial under rule 1.1004. After a hearing, the court denied Walnut Creek's motions, concluding that Walnut Creek "basically asks the court to revisit matters that it has already adequately addressed in its final ruling."

Walnut Creek appealed, and we transferred the case to the court of appeals. Depositors argued Walnut Creek's appeal was untimely because the insured's rule 1.904(2) motion merely rehashed its arguments and did not stop the thirty-day time clock to appeal the judgment. The court of appeals determined Walnut Creek's rule 1.904(2) motion was proper and its appeal was timely. On the merits, the court of appeals determined the district court misapplied the *North Glenn* factors.

The appellate court explained that the purpose of the *North Glenn* test "is to evaluate the structural and environmental underpinnings of the appraisal award and search out evidence of fraud, mistake, or malfeasance." The court of appeals held "the appraisal's conclusions as to the amount of loss and causation [are] binding and conclusive." The court of appeals rejected the district court's conclusion that the shingles contained a product defect that triggered deterioration (and therefore precluded recovery under the "Other Types of Losses" category of exclusions), noting that it was inconsistent with the binding conclusions of the appraisal panel. For the same reason, the court of appeals rejected the district court's conclusion that the defective construction bars recovery.

The court of appeals rejected Walnut Creek's request for additional funds to pay the "soft metals" replacement costs. While the appraisal award determined the replacement cost was $159,541.51, Depositors paid Walnut Creek $124,656.79 for the damage to the "soft metals." Because the policy states, "We will not pay on a replacement cost basis for any loss or damage . . . [u]ntil the lost or damaged property is actually repaired or replaced," and Walnut Creek did not show it completed repairs, the court of appeals concluded Walnut Creek was not entitled to additional payment for the "soft metals."

The court of appeals reversed the judgment of the district court as to the appraisal award and the breach of contract claim. The court of appeals remanded with directions to enter judgment in Walnut Creek's favor consistent with the appraisal panel's award (but excluding the amount predicated on damage to the air conditioning units).

One judge dissented. The dissenting judge concluded that causation should not be considered by the appraisal panel, so "[t]he

district court was well within its authority to disregard the appraisal panel's determination on causation." The dissent also noted that because the appraisal award expressly disclaimed that it determined relative causation, it was "incumbent upon the district court to resolve any coverage issues, policy exclusions, and issues of concurrent causation." The dissenting judge would affirm the district court's judgment.

Depositors applied for further review, which we granted.

## II. Standard of Review.

We review a district court's interpretation of an insurance policy for correction of errors at law. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). The district court's factual findings in a bench trial "are binding on appeal if supported by substantial evidence." *Pudil v. State Farm Mut. Auto. Ins.*, 633 N.W.2d 809, 811 (Iowa 2001). We review the district court's legal conclusions for correction of errors at law. *Frunzar v. Allied Prop. & Cas. Ins.*, 548 N.W.2d 880, 884 (Iowa 1996).

## III. Analysis.

We must decide whether the district court erred by failing to enforce the appraisal award. We begin with an overview of the insurance policy appraisal provision and caselaw applying the standard policy language. We conclude the better-reasoned cases permit appraisers to decide the factual cause of damage to insured property to determine the amount of the loss. The court is to decide coverage questions, but the appraisers' determination of the factual cause and monetary amount of the insured loss is binding on the parties absent fraud or other grounds to overcome a presumption of validity.

**A. The Appraisal Provision.** Iowa Code section 515.109 prescribes a standard form fire insurance policy to be used in the State

of Iowa. Iowa Code § 515.109(1) (2016). The standard policy includes an appraisal provision. *Id.* § 515.109(6)(*a*). The appraisal provision in the Iowa Code is based on the 1943 New York Standard Fire Policy adopted in most states. *See* C.T. Drechsler, Annotation, *Remedies of Insured Other than Direct Action on Policy Where Fire or Other Property Insurer Refuses to Comply with Policy Provisions for Appointment of Appraisers to Determine Amount of Loss*, 44 A.L.R.2d 850, § 1 & n.2, at 850–51 (1955) (recognizing Massachusetts, New Hampshire, Minnesota, and Texas as the only states that have not adopted the New York Standard Fire Policy).

Iowa property insurers must use policy language that is the "substantial equivalent" to the standard form's terms. *See* Iowa Code § 515.109(5) ("An insurer may issue a policy, . . . which contains coverage against the peril of fire and substantial coverage against other perils, if such policy includes provisions with respect to the peril of fire which are the substantial equivalent of the minimum provisions of such standard policy, provided [additional requirements are met]."); *see also Sager v. Farm Bureau Mut. Ins.*, 680 N.W.2d 8, 13 (Iowa 2004) ("Iowa's statute only prohibits those policies which are not the 'substantial equivalent' of the statutory policy."), *superseded by statute on other grounds,* 2005 Iowa Acts ch. 70, §§ 19–21 (codified at Iowa Code § 515.109), *as recognized in Postell v. Am. Family Mut. Ins.*, 823 N.W.2d 35, 48–49 (Iowa 2012). The Depositors insurance policy appraisal provision (on the left column), except for the final sentence, is the substantial equivalent of the prescribed statutory language for appraisals in the Iowa Code (on the right).

**Appraisal.** If we and you disagree on the amount of loss, either may make written demand for an

*Appraisal.* In case the insured and this company shall fail to agree as to the actual cash value or the

appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other, and will advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

*If there is an appraisal, we will still retain our right to deny the claim.*

Depositors policy § E.2 (emphasis added).

amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting the appraiser and the expenses of appraisal and umpire shall be paid by the parties equally.

Iowa Code § 515.109(6)(*a*).

To the extent the final sentence of Depositors' appraisal provision purports to change the meaning of the provision, it is unenforceable as

not substantially equivalent to the standard policy provision. *See Sager*, 680 N.W.2d at 13.

We last addressed the insurance appraisal provision in 1991. We observed the "appraisal is a supplementary arrangement to arrive at a resolution of a dispute without a formal lawsuit." *Cent. Life Ins. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 260 (Iowa 1991). We emphasized that the appraisal "serves as an inexpensive and speedy means of settling disputes over matters such as the amount of loss and value of the property in question." *Id.* A federal district court aptly noted the appraisal is "favored by both the Iowa legislature and the Iowa Supreme Court as a means for narrowing disputes that may ultimately have to be resolved in litigation." *Terra Indus., Inc. v. Commw. Ins. Co. of Am.*, 981 F. Supp. 581, 605 (N.D. Iowa 1997).

Other courts have noted the efficacy of these insurance appraisal provisions. The Minnesota Supreme Court stated,

> Minnesota has mandated appraisal clauses in fire insurance policies since 1895. [Appraisal] provisions have been included in property casualty policies for over 100 years as a means to provide "the plain, speedy, inexpensive and just determination of the extent of the loss." Appraisal clauses are also required for insurance policies that protect against damage caused by hail. Accordingly, there is a strong public policy in Minnesota favoring appraisals . . . .

*Quade*, 814 N.W.2d at 707 (citations omitted) (quoting *Kavli v. Eagle Star Ins.*, 288 N.W. 723, 725 (Minn. 1939)). The Wisconsin Supreme Court similarly observed,

> [T]he appraisal process is a fair and efficient tool for resolving disputes. First and foremost, the process is fair to both parties. It allows each to appoint an appraiser of their own liking, with a neutral umpire as the deciding vote. Appraisals also promote finality, are time and cost-efficient, and place a difficult factual question—the replacement value of an item—into the hands of those best-equipped to answer

that question. As a form of alternative dispute resolution, the appraisal process is favored and encouraged.

*Farmers Auto. Ins. v. Union Pac. Ry.*, 768 N.W.2d 596, 607 (Wis. 2009); *see also Fla. Ins. Guar. Ass'n v. Olympus Ass'n*, 34 So. 3d 791, 794 (Fla. Dist. Ct. App. 2010) ("Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits.").

We addressed judicial review of appraisal awards in *Central Life*, 466 N.W.2d at 260. We noted, "Appraisal awards do not provide a formal judgment and may be set aside by a court." *Id.* But, importantly, we concluded, "Provisions for appraisal of an insurance loss, whether under policy terms or pursuant to independent agreement, are valid and binding on the parties." *Id.* (citing 6 J. Appleman & J. Appleman, *Insurance Law and Practice* §§ 3921, 3924 (rev. 1972)). We made clear "the award is supported by every reasonable presumption and will be sustained even if the court disagrees with the result." *Id.* We specifically held that the appraisal "award will not be set aside unless the complaining party shows fraud, mistake or misfeasance on the part of an appraiser or umpire." *Id.*

The insurer met that high standard to set aside the award in *Central Life*. Central Life Insurance Company (Central) was insured under a policy issued by Aetna Casualty and Surety Company (Aetna). *Id.* at 258. A fire damaged buildings owned by Central in downtown Des Moines. *Id.* When the parties were unable to agree on the amount of the loss, Central invoked the Aetna policy's appraisal process. *Id.*[3]

---

[3]The Aetna appraisal provision stated,

*Appraisal.* In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and

Each party selected an appraiser.  *Id.* at 258–59.  "The appraisers failed to agree on an umpire and requested that a district court judge make the selection."  *Id.* at 259.  After hearing suggestions from both appraisers and Aetna's lawyer, the court selected an umpire "who was previously suggested by Central's appraiser and rejected by Aetna's appraiser."  *Id.* The umpire worked closely with Central's appraiser and ultimately adopted the calculations of Central's appraiser.  *Id.*  The award set the amount payable at $522,233.  *Id.*  Viewing that amount as excessive, Aetna retained another appraisal firm that determined the amount was $180,932.  *Id.*  Aetna offered that amount, which Central rejected.  *Id.*

Aetna filed a declaratory judgment action to set aside the award. *Id.* Central sued for enforcement of the award and for damages for Aetna's bad faith refusal to pay the award.  *Id.*  The district court consolidated the cases.  *Id.*  During discovery, Aetna learned that Central's appraiser had an undisclosed contingent fee that increased with the size of the award.  *Id.*  The policy required each party to select a "disinterested appraiser."  *Id.* at 258 n.1.  Both parties filed motions for summary judgment.  *Id.* at 259.  The district court denied Aetna's motion to vacate the appraisal award.  *Id.*  The court granted Central's motion

---

notify the other of the appraiser selected within twenty days of such demand.  The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by judge of a court of record in the state in which the property covered is located.  The appraisers shall then appraise the loss, stating separately actual cash values and loss to each item; and, failing to agree shall submit their differences, only to the umpire.  An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.  Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

*Cent. Life Ins.*, 466 N.W.2d at 258 n.1.

for summary judgment to enforce the appraisal award and entered judgment for Central in the amount of the award. *Id.* The bad-faith claim was submitted to the jury, which found Aetna was in bad faith and awarded compensatory damages for Central's attorney fees incurred enforcing the appraisal award through summary judgment but awarded no punitive damages. *Id.* at 259–60.

Aetna appealed. *Id.* at 260. Aetna requested that we set aside the appraisal award because Central's appraiser was not "disinterested" as a matter of law given his secret contingent fee. *Id.* Aetna also asked us to set aside the jury verdict, arguing that Aetna was not in bad faith for challenging the appraisal award. *Id.* We reversed the district court judgments and remanded the case for entry of judgment in Aetna's favor vacating the appraisal award and dismissing the bad-faith claim. *Id.* at 262–64. We held that Central's appraiser, as a matter of law, was not disinterested because his fee increased with the size of the award. *Id.* at 261. We explained "that the object and purpose of an appraisal is to secure a fair and just evaluation by an impartial tribunal" and that "appraisers should be in a position to act fairly and be free from suspicion or unknown interest." *Id.* at 260–61.

*Central Life* governs judicial review of appraisal awards, *see id.* at 260, but further analysis is required because that case did not adjudicate property damage with multiple causes. Against this backdrop, we turn to the challenges to the appraisal award here.

**B. Whether Causation Determinations Made by the Appraisal Panel Are Binding.** Depositors has not alleged or established any fraud or disqualifying conflict of interest on the part of an appraiser or umpire to set aside the award. *See id.* at 260. Rather, Depositors contends the district court was free to disregard the appraisal award in determining

the cause of the shingle damage and in applying coverage exclusions for defective shingles. We disagree in part. Coverage questions are for the court. *See Nat'l Sur. Corp. v. Westlake Invs. LLC*, 880 N.W.2d 724, 733–34 (Iowa 2016) (setting forth interpretive principles). But we conclude factual causation issues may be decided through the appraisal process. The appraisal award is presumptively binding on the parties and court. *See Cent. Life Ins.*, 466 N.W.2d at 260.

Other jurisdictions have adjudicated disputes over appraisal awards in insurance claims involving covered and uncovered damage. "Courts across the country agree that coverage determinations are reserved only to the courts." Ashley Smith, Comment, *Property Insurance Appraisal: Is Determining Causation Essential to Evaluating the Amount of Loss?*, 2012 J. Disp. Resol. 591, 594 (2012); *see, e.g., Trout Brook S. Condo. Ass'n v. Harleysville Worcester Ins.*, 995 F. Supp. 2d 1035, 1041 (D. Minn. 2014) ("[C]overage questions are not for appraisers."); *HHC Assocs. v. Assurance Co. of Am.*, 256 F. Supp. 2d 505, 511 (E.D. Va. 2003) ("[C]ourts have found consistently that whether coverage was properly denied is a legal issue reserved for the court alone."); *CIGNA Ins. v. Didimoi Prop. Holdings, N.V.*, 110 F. Supp. 2d 259, 268 (D. Del. 2000) ("Coverage questions . . . are legal questions for the Court."); *Wausau Ins. v. Herbert Halperin Distrib. Corp.*, 664 F. Supp. 987, 989 (D. Md. 1987) ("Th[e] issue [of the application of policy exclusions] . . . is within the competence of the Court, not an appraiser, to resolve."); *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007) ("Questions of coverage and liability should be decided only by the courts, not appraisers."); *Johnson v. Nationwide Mut. Ins.*, 828 So. 2d 1021, 1025 (Fla. 2002) ("[C]overage issues [a]re to be judicially determined by the court . . . ."); *Auto-Owners Ins. v. Kwaiser*, 476 N.W.2d 467, 469 (Mich.

Ct. App. 1991) ("We conclude that the issue of coverage is for the court, not the appraisers."); s*ee also St. Paul Fire & Marine Ins. v. Wright*, 629 P.2d 1202, 1203 (Nev. 1981) (per curiam) (concluding that umpire and appraisers who interpreted coverage provisions to determine the award amount exceeded the scope of their powers); 5 *New Appleman on Insurance Law Library Edition* § 48.03[2], at 48-12 (Lon A. Berk & Michael S. Levine eds., 2017) ("[A]ny . . . coverage disputes ultimately need to be resolved by the court, regardless of the appraisal concerning amount of loss."). We hold that coverage determinations are for the court. But this does not mean the court is free to disregard the appraisal award as to factual disputes that may be dispositive of coverage questions.

The fighting issue here is whether the appraisers may determine the cause-in-fact of damage to insured property (here, roofing shingles) when appraising the amount of the loss from the hailstorm. "Courts across the country are divided as to whether, in determining the 'amount of loss' pursuant to appraisal provisions like the one here, appraisers may consider questions of causation." *Auto-Owners Ins. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1101–02 (D. Colo. 2015). Some courts view causation questions as off-limits for appraisers. *See, e.g., Spearman Indus., Inc. v. St. Paul Fire & Marine Ins.*, 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000) ("[C]ausation is a matter for the courts—not an appraiser—to decide."); *Rogers*, 984 So. 2d at 392 (concluding that the determination of causation "is within the exclusive purview of the courts, not the appraisers"); *Munn v. Nat'l Fire Ins. Co. of Hartford*, 115 So. 2d 54, 55 (Miss. 1959) ("We have concluded that the appraisers have no power to determine the cause of the damage. Their power is limited to

the function of determining the money value of the property which may be damaged by the storm.").

The better-reasoned cases, however, hold the appraisers necessarily address causation when determining the amount of the loss from an insured event. *See, e.g., Phila. Indem. Ins. v. WE Pebble Point*, 44 F. Supp. 3d 813, 818 (S.D. Ind. 2014) ("[I]t would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between 'storm damage' and 'non-storm damage.'  To hold otherwise would be to say that an appraisal is never in order unless there is only one conceivable cause of damage—for example, to insist that 'appraisals can never assess hail damage unless a roof is brand new.' " (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 892–93 (Tex. 2009) (also stating "appraisers must always consider causation, at least as an initial matter"))); *CIGNA Ins.*, 110 F. Supp. 2d at 268 ("[U]nder the circumstances of this case, including the plain language of the policy, a determination of amount of loss under the appraisal clause includes a determination of causation."); *Quade*, 814 N.W.2d at 706–07 ("[A] determination of the 'amount of loss' under the appraisal clause necessarily includes a determination of causation.").  We are persuaded by this precedent to hold appraisers may decide the factual cause of damage to property in determining the amount of the loss from a storm.

The court of appeals in *North Glenn* considered "whether causation and coverage issues are to be determined by the appraisers, or by the court."  854 N.W.2d at 69.  The court of appeals held that an "appraisal does not determine issues of coverage but simply causation."  *Id.* at 68. We agree.

The court of appeals in the instant case followed *North Glenn*. North Glenn Homeowners Association (North Glenn) was an association of property owners insured by State Farm. *Id.* After a hailstorm in July 2009, North Glenn submitted a claim for hail damage to a roof. *Id.* State Farm paid the claim, but North Glenn did not repair all of the damage. *Id.* Another storm hit North Glenn's buildings in March 2011, and North Glenn filed another claim for wind and hail damage. *Id.* State Farm denied the claim after inspecting the roof and determining that the hail damage was from the 2009 storm and therefore not covered under the 2011 policy. *Id.* "The wind damage was estimated to be less than the policy deductible." *Id.*

North Glenn demanded an appraisal under the policy's standard appraisal provision—worded identically to Depositors'. *See id.* While State Farm agreed to an appraisal of the wind damage, it refused an appraisal of the hail damage. *Id.* North Glenn filed a petition for declaratory judgment, "requesting a determination of coverage issues, seeking an order for appraisal, and alleging breach of contract." *Id.* North Glenn later filed a motion to compel appraisal; the district court granted the motion. *Id.* Upon analyzing the appraisal clause, the district court found the clause requires the appraisers to examine the loss, which requires consideration of any preexisting damage. *Id.*

On appeal, State Farm argued that the district court erred in ordering an appraisal that requires the appraisers to determine causation, which State Farm contended is beyond the appraisers' authority. *Id.* at 69. The court of the appeals recognized that "[t]he dispute is whether causation and coverage issues are to be determined by the appraisers, or by the court." *Id.* The court of appeals rejected the rationale of other courts that decided appraisers have no authority to

consider issues of causation and, instead, relied on the reasoning of the Minnesota Supreme Court in *Quade*. *Id.* at 70–71.

The *Quade* court held "a determination of the 'amount of loss' under the appraisal clause necessarily includes a determination of causation." 814 N.W.2d at 706–07. The *Quade* court acknowledged "[c]overage questions, such as whether damage is excluded because it was not caused by wind, are legal questions for the court." *Id.* at 707. The Iowa Court of Appeals adopted this reasoning, noting that "[a]s part of the appraisal process, appraisers must determine what the amount of 'loss' is, which often requires consideration of causation." *North Glenn*, 854 N.W.2d at 71. The *North Glenn* court noted that "appraisers must consider what damage was caused by hail, and what damage was not, or damage with which they are unconcerned, such as normal wear and tear." *Id.*

However, the court of appeals explained that "the issue of coverage may be further litigated," and "the causation determinations by the appraisers may be subject to further review by the district court." *Id.* The court then held, "[W]hether the appraisal award will be conclusive on all issues will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." *Id.* (quoting *Quade*, 814 N.W.2d at 707–08). The court of appeals did not further explain how to apply these factors. *See id.*

Here, the appraisers themselves made clear they were determining only the amount of loss attributable to the hailstorm without deciding coverage exclusions or other causes of shingle damage:

> [T]he appraisal herein is limited in scope to the amount of loss and damage as a result of a hail and windstorm that occurred on or about August 8, 2012. The award does not

include an evaluation or determination of coverage, policy exclusions or the relative causation of the same.

Depositors' policy excludes coverage for preexisting deterioration caused by defective shingles. But the appraisers necessarily distinguished the hailstorm damage from deterioration of defective shingles installed between 2004 and 2006. The appraisers were entitled to rely on expert opinions that the August 8, 2012 hailstorm caused damage to the roofing shingles. One roofing expert, Nicholas Waterman, observed eight to twelve "hits" from hail per ten-by-ten-foot square sections of shingles, not including the applique that had deteriorated over the half-decade since the original installation. The public adjuster, Timothy Barthelemy, observed nine to eleven hits per ten-by-ten-foot square. The appraisers were not required to accept conflicting expert opinions that the hail caused *no* shingle damage. It is undisputed the same hailstorm damaged metal gutters and fascia at Walnut Creek.

We conclude Depositors failed to overcome the appraisal award's presumption of validity. The district court was not free to make its own factual determination that there was no hail damage to the shingles. *See Cent. Life Ins.*, 466 N.W.2d at 260 ("When reviewed, the award is supported by every reasonable presumption and will be sustained even if the court disagrees with the result."). To hold otherwise would undermine the efficacy of the appraisal process. The appraisal award is binding on the parties as to the dollar amount of the loss for shingle damage caused by the August 8, 2012 hailstorm, but that amount remains subject to coverage exclusions and limitations.

Coverage issues are for the court. Depositors relies on the anticoncurrent-cause provision and the exclusions for defective materials and deterioration. Depositors argues the policy does not cover roof

damage caused by *both* hail and deterioration from defective shingles. *See Travelers Prop. Cas. Co. of Am. v. Brookwood, LLC*, 283 F. Supp. 3d 1153, 1161–63 (N.D. Ala. 2017) (applying exclusions for faulty workmanship and inadequate maintenance to defeat coverage claim for storm water damage from leaking roof). Anticoncurrent-cause provisions are enforceable under Iowa law. *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 241 (Iowa 2015). "Anti-concurrent cause language addresses multiple concurrent or sequential causes of the same loss. It does not apply if the perils at work caused different damage or different losses. These would not be concurrent causes." 5 *New Appleman on Insurance Law Library Edition* § 44.04[1], at 44-28 (Marc J. Shrake ed., 2017).

After its bench trial, the district court found that "the defective and deteriorating shingles are at the core of [Walnut Creek's] roof damage." But the court also found *no* hail damage to the shingles, contrary to the appraisal award. A new trial is required because the district court applied the wrong legal standard when it disregarded the appraisers' causation determination on hail damage. In the retrial, the court shall accept the appraisal award as to the hail damage loss, and then determine the amount, if any, Depositors owes under the policy after adjudicating the coverage defenses. We express no opinion on the merits of those defenses.

### IV. Disposition.

For these reasons, we vacate the decision of the court of appeals and reverse the district court judgment rejecting the appraisal award. We affirm the district court judgment declining Walnut Creek's claim for additional sums for soft metal damage. We remand the case for the

district court to adjudicate coverage exclusions for prior deterioration and defective shingles under the anticoncurrent-cause provision.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**