# IN THE SUPREME COURT OF IOWA

No. 18–0129

Filed March 8, 2019

METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY
d/b/a **METLIFE AUTO & HOME** and **ECONOMY PREMIER ASSURANCE COMPANY,**

Appellees,

vs.

**AUTO-OWNERS MUTUAL INSURANCE COMPANY,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt and Jeffrey D. Farrell, Judges.

Business insurer appeals judgment in favor of homeowners' insurer for indemnification for half the cost of a settlement of tort claims arising from an accidental shooting death on the insured property. **AFFIRMED.**

Matthew T. Nelson of Warner Norcross & Judd, Grand Rapids, Michigan; John J. Bursch of Bursch Law PLLC, Caledonia, Michigan; and Timothy W. Hamann and Joshua L. Christensen of Clark, Butler, Walsh & Hamann, Waterloo, for appellant.

Michael S. Jones of Patterson Law Firm, L.L.P., Des Moines, for appellees.

**WATERMAN, Justice.**

In this appeal, we must resolve a dispute between insurance companies over liability coverage for a fatal accident. A dentist and his wife formed a limited liability company (LLC) that held title to investment properties, including a farmhouse where an accidental shooting occurred. The dentist had purchased personal (homeowners) liability insurance and commercial general liability (CGL) insurance from separate insurers. The CGL insurer denied coverage. The homeowners' insurer and insured settled the death claim for $900,000 and sued the CGL insurer for reimbursement. The case proceeded to a bench trial, and the district court entered judgment against the CGL insurer for $450,000, rejecting various coverage defenses. The CGL insurer appealed, and we retained the appeal.

The principal fighting issue is whether the LLC, as owner of the farmhouse, had potential liability under a premises liability theory for a dangerous condition (the loaded, unsecured rifle left on a bed for several months). On our review, we conclude the district court correctly interpreted the CGL insurance contract, and its factual findings on potential liability and the reasonableness of the settlement are supported by substantial evidence. For the reasons explained below, we affirm the district court judgment.

## I. Background Facts and Proceedings.

Jay and Lorrie Lala, husband and wife, live in Mason City, Iowa.[1] The Lalas have been married for twenty-seven years and have two children, Nick and Sam. Jay is a dentist with a practice in Mason City.

---

[1]There are multiple members of the Lala family referenced in this opinion, and for that reason, we will refer to them by their first names when necessary.

In 1997, Jay and Lorrie organized Parker House Properties, L.L.C. (Parker House), as a limited liability company to hold property. Jay and Lorrie each own fifty percent of Parker House. That entity owns various investment properties, including the building that houses Jay's dental practice. Parker House also owns apartment buildings, land in Mason City, a house in Cedar Rapids where Jay's mother lives, and land in Floyd County, Iowa, with a farmhouse at 1545 Foothill Avenue.

The Lalas purchased the Foothill Avenue property for investment purposes. The farmhouse is furnished, but no one lives there. Jay hosts occasional business and public service events there. The Lalas also use the house and farmland for recreation, including hunting, fishing, target shooting, riding all-terrain vehicles (ATV) and dirt bikes, running their dogs, and swimming.

**A. The Accidental Shooting.** On April 22, 2012, Nick, his friend, seventeen-year-old Hunter True, and Nick's girlfriend, Hayley, went to the Foothill Avenue property to ride dirt bikes and ATVs. Jay had also been at the property that day. Jay left shortly before the teenagers departed. Before leaving, Jay told Nick to lock up the house.

While Nick was locking up, he noticed that one of the Lalas' firearms, a .22 caliber Ithaca lever action rifle, had been left on a bed in one of the bedrooms. Jay had purchased the rifle when he was about ten years old and kept it at the farm for hunting and target shooting. The rifle had been left on the bed after Sam and Nick last used it in January or February.

Jay expected Nick to secure each firearm in a soft gun case in one of the bedrooms after ensuring it was unloaded. When Nick was about twelve years old, he took a hunter safety class in which he learned how to store firearms properly. Jay had also talked to Nick about how to

handle firearms safely and to treat every gun as if it was loaded. Nevertheless, on this April day, Nick picked up the rifle and the weapon accidentally discharged. The bullet struck Hunter in the abdomen. Hunter was taken by ambulance to the hospital in Mason City, where he died from the gunshot wound.

**B. The Insurance Policies.** The Lalas had a personal insurance policy through Metropolitan Property and Casualty Insurance Company (Metropolitan) that covered Jay and Lorrie, as well as Nick and Sam. This policy provided liability defense and indemnity coverage. The Metropolitan policy specifically insured the Lalas' primary home, personal vehicles, and the Foothill Avenue property.

Parker House separately purchased a "Tailored Protection" insurance policy from Auto-Owners Mutual Insurance Company (Auto-Owners). The policy included CGL coverage with a $1,000,000 each occurrence liability limit.

In September 2006, the CGL policy was amended with an endorsement insuring the 116.78 acres of farmland in Floyd County. After Parker House purchased the Foothill Avenue home, Jay's insurance agent inspected the farm and then added the property to the Auto-Owners' policy. The CGL policy described the unoccupied farmhouse as a "Storage Building" and the remaining property as "Vacant Land (for-profit)."

"Insureds" under the Auto-Owners' CGL policy are described as follows:

> **SECTION II—WHO IS AN INSURED** . . . .
> 1. If you are designated in the Declarations as:
> > . . . .
> > c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the

conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

. . . .

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business, or your "volunteer workers" only while performing duties related to the conduct of your business. . . .

**C. The Insurance Settlement and Litigation.** In January 2014, Metropolitan reached a settlement with Michael and Hillary Carpenter, Hunter's parents, whereby Metropolitan agreed to pay $900,000 in exchange for a release of all claims and potential claims against the Lalas, Parker House, Metropolitan, and Auto-Owners.

Jay and Parker House also made a coverage claim with Auto-Owners. Auto-Owners denied coverage, stating that its policy only covered individuals with respect to the "conduct of a business," and any claims resulting from Hunter's death were not business-related. Auto-Owners also stated that the policy only covered Parker House, not the Lalas personally.

In June 2014, Metropolitan filed this civil action seeking subrogation from Auto-Owners. Metropolitan later amended its petition to include Parker House as a defendant and to allege indemnity and contribution claims. Auto-Owners denied liability, asserting that its policy only provided business coverage. Auto-Owners' pleadings also disputed Metropolitan's right to recover contribution, subrogation, or indemnity. Auto-Owners amended its answer multiple times to add additional affirmative defenses. At the time of trial, Auto-Owners had asserted ten affirmative defenses.

Auto-Owners filed a motion for summary judgment, arguing its policy did not cover the shooting because it was unrelated to Parker House's business. Auto-Owners later filed two motions for partial summary judgment, one seeking to prevent Metropolitan from asserting a contribution claim and the other seeking a ruling that comparative fault principles apply to the subrogation claim. The district court denied the motions. Auto-Owners filed an application for interlocutory appeal, which we denied.

On November 23, 2016, Parker House filed a motion for summary judgment on Metropolitan's indemnity and contribution claims. Auto-Owners renewed its motion for summary judgment and motions for partial summary judgment.

On February 21, 2017, Parker House filed an offer to confess judgment in the amount of $450,000, to assign its rights against Auto-Owners to Metropolitan, and to pay $1000 of the judgment in exchange for Metropolitan agreeing not to execute on the offer to confess judgment. On February 24, Metropolitan accepted the offer. Three days later, Metropolitan acknowledged it had received the $1000 payment.

On March 7, the district court granted Auto-Owners' second motion for partial summary judgment, finding that comparative fault would be considered at trial. The court denied Auto-Owners' other motions. The case proceeded to a bench trial.

Auto-Owners filed pretrial motions in limine to exclude expert testimony of attorneys Craig Stanovich and Marsha Ternus, a former chief justice of this court. Auto-Owners argued Stanovich's opinion on contract interpretation was inadmissible because that issue was for the court. Auto-Owners argued Ternus's testimony was inadmissible because she failed to offer a factual opinion as to the reasonableness of

the settlement between Metropolitan and Parker House. The court denied both motions.

At trial, Auto-Owners introduced expert testimony from Max Kirk and David Riley, two lawyers with decades of jury trial experience. These experts testified that the Metropolitan settlement was unreasonable because, if the case of Hunter's estate had been tried to a jury, most of the fault probably would have been allocated to Nick, with Jay secondarily liable as the gun owner. Neither believed a jury would apportion fault to Parker House on a premises liability theory.

Metropolitan introduced the testimony of Ternus and Ron Pogge, another experienced attorney. Pogge testified that he believed a jury would have apportioned a significant amount of fault to Parker House under a premises liability theory. Pogge believed a jury would determine Nick and Jay were agents of Parker House. Ternus testified that the gun on the bed created a dangerous condition in the home and Parker House faced substantial exposure under a premises liability theory. Ternus agreed that Nick could be considered an agent of Parker House.

After a bench trial, the district court entered judgment against Auto-Owners and in favor of Metropolitan for $450,000. The district court found that Parker House was insured under the Auto-Owners' policies because its ownership of the farm was for investment purposes, which the court concluded was a business purpose. The court found that a jury could determine that Nick was also covered under the Auto-Owners' policies as either an employee or volunteer worker when he was securing the rifle and locking the house. The court also determined that a jury could conclude Parker House was liable under a premises liability theory. The court found that the settlement between Metropolitan and Parker House was reasonable and Metropolitan was entitled to

contribution from Auto-Owners. The court rejected Auto-Owners' affirmative defenses.

Auto-Owners filed a motion to amend or enlarge the district court's ruling, requesting the court grant a $1000 credit for the amount Metropolitan had already received through its settlement with Parker House. Auto-Owners also asked for specific written rulings on its motions in limine regarding the testimony of Stanovich and Ternus. The court denied the motion to amend or enlarge.

Auto-Owners appealed, and we retained its appeal.

## II. Standard of Review.

We are reviewing a judgment entered after a bench trial. The parties agree that our standard of review is for correction of errors at law. *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005). "We review a district court's interpretation of an insurance policy for correction of errors at law." *Walnut Creek Townhome Ass'n v. Depositors Ins.*, 913 N.W.2d 80, 87 (Iowa 2018). The district court's factual findings have the effect of a special verdict and are binding on us if supported by substantial evidence. *Id.*

Auto-Owners seeks review of the district court's denial of its motion for summary judgment. "The denial of a motion for summary judgment is no longer appealable once the matter proceeds to a trial on the merits." *Lindsay v. Cottingham & Butler Ins. Servs., Inc.*, 763 N.W.2d 568, 572 (Iowa 2009). Regardless, the issue raised in Auto-Owners' motion for summary judgment—whether the Auto-Owners policy provided liability coverage for the accidental shooting at a Parker House property—was adjudicated at trial. For that reason, our review is for correction of errors at law. *See Walnut Creek Townhome Ass'n*, 913 N.W.2d at 87.

We review rulings on the admissibility of expert testimony during a bench trial for an abuse of discretion. *Heinz v. Heinz*, 653 N.W.2d 334, 341 (Iowa 2002).

### III. Analysis.

We are reviewing Auto-Owners' challenges to the judgment imposing liability for half of the settlement of the tort claims arising out of Nick Lala's accidental, fatal shooting of Hunter True. Auto-Owners denied coverage and refused to provide a defense to Parker House on the tort claims ultimately settled by Metropolitan. The district court ruled that Auto-Owners is bound by that settlement because (1) a jury could conclude the claim was covered by its CGL policy and (2) the settlement was "reasonable and prudent." *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 535 (Iowa 1995). We address each issue in turn.

**A. Whether the Liability Claims Arising Out of the Accidental Shooting Were Covered by the Auto-Owners' CGL Policy.** Auto-Owners argues that Parker House's claim was not covered under its CGL policy for two reasons: (1) Nick was not acting on behalf of Parker House and was therefore not an insured under Auto-Owners' policy at the time of the accident, and (2) Parker House itself lacked potential liability under a premises liability theory. We begin our analysis with the policy language.

"Construction of an insurance policy and the interpretation of its language are matters of law for the court to decide, when as here, neither party offers extrinsic evidence about the meaning of the policy's language." *Am. Family Mut. Ins. v. Corrigan*, 697 N.W.2d 108, 111 (Iowa 2005) (quoting *Grinnell Mut. Reins. v. Emp'rs Mut. Cas. Co.*, 494 N.W.2d 690, 692 (Iowa 1993)). Our principles governing the interpretation and construction of insurance policies are well established.

The cardinal principle in the construction and interpretation of insurance policies is that the intent of the parties at the time the policy was sold must control. Except in cases of ambiguity, the intent of the parties is determined by the language of the policy. "An ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one."

*Id.* (quoting *LeMars Mut. Ins. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998)).

"Because insurance policies are contracts of adhesion, an insurer assumes a duty to define in clear and explicit terms any limitations or exclusions to the scope of coverage a policy affords." *Nat'l Sur. Corp. v. Westlake Invs., LLC*, 880 N.W.2d 724, 734 (Iowa 2016). "Nevertheless, where no ambiguity exists, we will not write a new policy to impose liability on the insurer." *Id.*

It is undisputed that Parker House is the named insured under the policy and the farmhouse is an insured location. The Auto-Owners policy has language we italicize below that limits liability coverage for individual members, employees and volunteer workers of a limited liability company to their *business* conduct, but the policy has no such limitation for Parker House as an entity.

**SECTION II—WHO IS AN INSURED** . . . .

1. If you are designated in the Declarations as:

    . . . .

    c. A limited liability company, you are an insured. *Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.*

    . . . .

2. Each of the following is also an insured:

    a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their

employment by you or *while performing duties related to the conduct of your business*, or your "volunteer workers" only while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for "bodily injury", "personal injury" or "advertising injury"

(1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" *while in the course of his or her employment or performing duties related to the conduct of your business*, or to your other "volunteer workers" *while performing duties related to the conduct of your business*;

(2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence.

(Emphasis added.)

We agree with the district court's interpretation that Nick is covered under the Auto-Owners policy only if he was acting for Parker House, while the limited liability company itself is covered for premises liability. Auto-Owners argues Nick was engaged in his own personal recreation and not engaged in business conduct for Parker House when he accidentally shot Hunter. The CGL insurer further argues Parker House lacked exposure under a premises liability theory.

Auto-Owners relies on unpublished cases from other jurisdictions. *See, e.g., Transcon. Ins. v. Edwards*, Civil No. 96-5099, 1996 WL 814532, at *7 (W.D. Ark. Dec. 23, 1996) (holding that an insured's actions of assault and kidnapping did not fall within the conduct of the insured's business); *Farm Bureau Gen. Ins. Co. of Mich. v. Estate of Stormzand*, No. 325326, 2016 WL 1688883, at *2–3 (Mich. Ct. App. Apr. 26, 2016) (per curiam) (holding that an insurance company had no duty to indemnify a business owner who loaned his son the company's off-road vehicle for a recreational event, at which the son's friend sustained serious injury, because the loan was not business conduct covered under

the insurance policy); *Simonsen v. Lumber Co. Brew Pub & Eatery, LLC*, No. 2012AP594, 2013 WL 500395, at *3 (Wis. Ct. App. Feb. 12, 2013) (per curiam) (holding a bar was not liable for an off-duty bartender's assault of another bartender at the bar). The closest case cited by Auto-Owners is *Sebastiano v. Bishop*, No. OT-97-003, 1997 WL 587138, at *3–4 (Ohio Ct. App. Sept. 19, 1997) (holding that a general liability policy did not cover a construction company owner's son's accidental shooting of a friend with a gun kept in a company truck). These cases are not controlling. Under our standard of review, we must focus on the trial record.

1. *Whether Nick was engaged in business conduct for Parker House.* The district court found that Parker House had purchased the Foothill Avenue property as an investment, a business purpose. The district court found that Nick was acting for Parker House or its manager, Jay, when he was told to secure the farmhouse when the accidental shooting occurred. Whether an agency relationship exists under these circumstances is a question of fact. *See Peak v. Adams*, 799 N.W.2d 535, 546 (Iowa 2011) ("Agency is generally a question of fact."). "Agency . . . results from (1) manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to the former's control[,] and[] (2) consent by the latter to so act." *Id.* at 546 n.2 (alteration in original) (quoting *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 38 (Iowa 1977)).

We must determine whether substantial evidence supports the district court's findings. Parker House, as an LLC, can only act through its members, managers, employees, and agents. Nick was asked by Jay, the LLC's manager, to secure the house. Securing the property is a business purpose—to protect the unoccupied farmhouse against vandals

and burglars. Securing the property is more than just locking the outside doors but also includes unloading and properly storing firearms. That business purpose is not defeated by the fact the farmhouse was also used for recreation. Nick can wear two hats, and his acts at the farmhouse may be undertaken for both business and personal reasons. We determine that substantial evidence supports the district court's finding that Nick was engaged in conduct for the business of Parker House at the time he accidentally shot Hunter.

2. *Whether Parker House had premises liability exposure.* Parker House is the named insured under the Auto-Owners policy, which provides premises liability coverage. Jay made a coverage claim on behalf of Parker House. Auto-Owners denied coverage on grounds the accidental shooting was unrelated to the business activities of the limited liability company. Importantly, the CGL policy language quoted above provides coverage to the limited liability company (Parker House) as the named insured without language limiting coverage to acts taken "in the conduct of [its] business." That coverage limitation expressly applies to the LLC's members individually or its employees individually, not the entity itself. We agree with the district court's interpretation that the Auto-Owners policy covers a premises liability claim against the LLC without regard to whether the accidental injury on the insured property occurred during business activities.

The fighting issue is whether Parker House faced potential exposure under a premises liability theory for this accidental shooting at the insured farmhouse. We use a general negligence standard to evaluate a possessor of land's premises liability to licensees and invitees. *Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 909 (Iowa 2017). We use the following multifactor approach:

> We impose upon owners and occupiers only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. Among the factors to be considered in evaluating whether a landowner or occupier has exercised reasonable care for the protection of lawful visitors will be: (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

*Id.* at 910 (quoting *Koenig v. Koenig,* 766 N.W.2d 635, 645–46 (Iowa 2009)).

The Restatement (Third) of Torts: Liability for Physical and Emotional Harm has adopted the same approach for evaluating premises liability claims. § 51, at 242 (Am. Law Inst. 2012) [hereinafter Restatement (Third)]. The duty of a possessor of land is as follows:

> Subject to § 52, a land possessor owes a duty of reasonable care to entrants on the land with regard to:
> (a) conduct by the land possessor that creates risks to entrants on the land;
> (b) artificial conditions on the land that pose risks to entrants on the land;
> (c) natural conditions on the land that pose risks to entrants on the land; and
> (d) other risks to entrants on the land when any of the affirmative duties provided in Chapter 7 is applicable.

*Ludman,* 895 N.W.2d at 910 (quoting Restatement (Third) § 51, at 242); *see also* Restatement (Third) § 51, cmt. *i,* at 248 (adopting the same multifactor approach as *Koenig*).

The bench trial included a battle of experts. The district court heard testimony from four attorneys: Marsha Ternus and Ron Pogge for Metropolitan, and Max Kirk and David Riley for Auto-Owners.

In Ternus's opinion, Parker House would have been liable for its own negligence and vicariously liable for Nick's negligence. In her view, the loaded gun was a dangerous condition on the land that Parker House could have warned entrants about or unloaded and securely stored the weapon. Parker House, if it were exercising reasonable care, would inspect the house periodically and determine if any unsafe conditions existed. If there were any unsafe conditions, a property owner exercising reasonable care would take steps to ameliorate the dangerous condition. In her expert report, Ternus concluded, "Here, the shooting would not have occurred absent Parker House's failure to inspect the premises and remove the cocked and loaded gun." According to Ternus, "That failure was one in a chain of events culminating in Hunter's death." Parker House's negligence was a factual cause of Hunter's death, "notwithstanding the subsequent negligence of Nick in mishandling the loaded gun." Regardless, in Ternus's opinion, Nick was acting as an agent of Parker House when the shooting occurred "so as to give rise to vicarious liability for his actions on the part of Parker House." Ternus concluded,

> I understand that Auto-Owners contends Nick was not acting within the scope of his agency when he picked up the loaded gun and accidentally shot Hunter. Again, I disagree with this conclusion. Common sense would indicate that "locking up" the house included more than simply locking the door. No doubt Nick shut off the lights when he left the premises. No doubt it would be expected that he would remedy any other condition he saw that might present a danger. For example, if someone had left the water running when the boys were there in January or February, one would infer from the circumstances and common sense that Nick would be expected to shut off the water. A jury would likely also reasonably infer that if Nick observed a gun that had not been properly stored, he would be expected to secure the gun as part of his securing of the house. This action was a benefit to Parker House because it removed a weapon that vandals and other transients might use to shoot up the

house (or another person in the process), and it removed a condition that might pose a danger to lawful entrants onto the property who would be unaware, as was Nick, that the gun was loaded and cocked. Moreover, as the district court stated in its ruling on Auto-Owners' motion for summary judgment, "[t]he storage and use of guns on this particular property is not outside the conduct of the business of holding such property for future sale as recreational property."

Ron Pogge also testified on behalf of Metropolitan. In Pogge's opinion, Parker House could have been held liable under a premises liability theory and a jury could determine that Nick was acting as an agent of Parker House at the time of the shooting. Even a cursory inspection of the property would have revealed the dangerous condition. In his report, Pogge concluded that "the fact finder would apportion a significant portion of the fault for this occurrence upon Parker House." Pogge believed that it was reasonable to settle the claim to avoid potential liability and that $450,000 was a reasonable settlement amount.

Max Kirk testified on behalf of Auto-Owners. In his opinion, the settlement was not reasonable because Nick Lala's "fault would come very close to being the sole cause of the injuries sustained by Hunter True." Kirk believed that a jury would not have found Parker House liable. Kirk concluded in his expert report that "a reasonable and prudent person in the position of Parker House would not pay anything beyond nominal damages to settle the claims of [Metropolitan]." Kirk believed a premises liability theory would fail because all Nick was required to do when locking up the house was secure the doors. Locking up the house would not have required handling the gun. Kirk testified that a reasonable settlement amount would have been the anticipated defense costs of $50,000–$75,000. Kirk believed Nick would have ninety percent of the fault and Jay would have ten percent, and Parker House would have received a directed verdict or defense verdict.

David Riley also testified on behalf of Auto-Owners. In his view, Parker House was not liable and would have received a directed verdict, or any assessment of fault would be negligible. Riley believed there was no agency relationship between Nick and Parker House, there was no business purpose for Nick's visit to the house that day, and any duty to maintain the weapon was an obligation personal to Jay. Riley differentiated between Jay's obligation to maintain the gun and Parker House's duty to maintain the property. In his report, Riley concluded,

> In my opinion, had the case been tried to a jury, the jury would have put 75% to 100% of the fault on Nick Lala, and the remainder of the fault, if any, on Jay Lala, individually. No fault would have been assessed to Parker House Properties, LLC.

Riley believed this case could have been a negligent entrustment of a chattel case, but even under that theory Parker House would not be liable. Riley believed there was a defense cost for Parker House of about $45,000–$50,000.

The district court was the trier of fact. The court could find the testimony of Metropolitan's experts more credible than Auto-Owners' experts. The district court made these findings:

> Parker House faced exposure under the standard [for premises liability]. Hunter True was at the Farm at the invitation of Nick and with the consent of Jay and Lorrie, the only two members of Parker House. Hunter went into the house with Nick to lock up. The loaded rifle created a risk of harm that was foreseeable—Jay had talked to the boys about the need to unload and store away guns after using them. The boys had taken hunter safety courses and been around guns for years. They understood the risk of harm. There was no real burden to unloading and securing the rifle after using it, it is just a matter of taking a little time to do so. As Nick testified in his deposition when asked why a loaded weapon might have been left on the bed, he speculated that either Sam or he had just been lazy. The dangerous condition was easily correctable. Under these facts, the

issue of reasonable care would clearly create a jury question and serve as grounds for a verdict against Parker House.

We determine that substantial evidence in the record supports the district court's factual finding that Parker House was potentially liable for Hunter's death under a premises liability theory. The dangerous condition, the loaded rifle left on the bed, had been there several months. Nick left the loaded rifle on the bed in January or February. His job then, and on April 22, the day of the accident, was to secure the property. Nick's knowledge of the dangerous condition is imputed to Parker House. Moreover, any reasonable inspection of the property during those months would have discovered the loaded firearm. Given the potential premises liability, Auto-Owners provided liability coverage for this accidental shooting on its insured's business property.

**B. Whether the Settlement Was Reasonable.** To determine whether a settlement is reasonable, we consider "what a reasonably prudent person in the position of the defendant would have settled for on the merits of the plaintiff's claim." *Red Giant Oil Co.*, 528 N.W.2d at 535. The court considers "facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Id.* (quoting *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982)). The insured need not establish actual liability to the party with whom it has settled. Instead, the insured need only show a *potential* liability, as supported by the evidence that culminated in a settlement that is reasonable in view of the size of the possible recovery and likelihood that liability would be established. *Id.*

The United States District Court for the Northern District of Iowa discussed factors for determining the reasonableness of a settlement:

The ultimate issue to be decided is the reasonableness of a settlement which avoids a trial. Reasonableness, therefore,

is not determined by conducting the very trial obviated by the settlement. Consequently, the decisionmaker receives not only the customary evidence on liability and damages but also other evidence, such as expert opinion of trial lawyers evaluating the "customary" evidence. This "other evidence" may include verdicts in comparable cases, the likelihood of favorable or unfavorable rulings on legal defenses and evidence issues if the tort action had been tried, and other factors of forensic significance. The evaluation of this kind of proof is best understood and weighed by a trial judge.

*Gen. Cas. Ins. Co. of Wis. v. Penn-Co Constr., Inc.,* No. C03-2031-MWB, 2005 WL 503927, at *45 (N.D. Iowa Mar. 2, 2005) (quoting *Alton M. Johnson Co. v. M.A.I. Co.,* 463 N.W.2d 277, 279 (Minn. 1990)).

Auto-Owners argues that Ternus's testimony should not have been admitted because it could not have assisted the trier of fact in understanding the evidence or determining a fact in issue. Ternus's opinion related to whether a jury would assess liability to Parker House for Hunter's death. We give district courts wide latitude in receiving expert testimony during a bench trial. *Heinz,* 653 N.W.2d at 341. The district court did not abuse its discretion in allowing this expert testimony.

The district court found that the expert opinions "support[] Metropolitan's theory that Parker House's settlement was reasonable and prudent to avoid the risk of a worse outcome." The district court considered Parker House's exposure to damages. The district court, applying *Red Giant Oil Co.,* concluded that Metropolitan's settlement was reasonable, stating,

There is no question that the estate of Hunter True would be able to show liability for his death. Neither party to this case believes that he had any fault. Neither party to this case disputed that the $900,000 settlement for his death was reasonable as damages. However, the question of assignment of fault between Parker House and the individual actors is not readily determinable. It is extremely difficult to find whether a jury would have held Parker House wholly

accountable under a premises liability theory, the individual actors wholly accountable under a negligence theory, or split accountability between or among them. Parker House's settlement took the guesswork from the case and avoided a worse outcome. Under the unusual circumstances presented in this case, that settlement was reasonable and prudent.

We conclude the district court correctly applied the law, and its factual findings on the reasonableness of this settlement are supported by substantial evidence. This $900,000 settlement with disputed liability is a reasonable amount for the accidental death of a healthy seventeen-year-old.

Accordingly, we affirm the district court's judgment that Auto-Owners as a coinsurer of the farmhouse property is obligated to indemnify Metropolitan for half of the $900,000 settlement. *See Red Giant Oil Co.*, 528 N.W.2d at 535.

### IV. Disposition.

For these reasons, we affirm the district court judgment.

**AFFIRMED.**

All justices concur except McDonald, J., who takes no part.