# IN THE COURT OF APPEALS OF IOWA

No. 20-1394
Filed February 16, 2022


**DARYL BORTVIT AND SHEILA BORTVIT, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF THOMAS LEE BORTVIT, and BRITTANY DAHL,**
        Plaintiffs-Appellants,

**vs.**

**DONALD CHRISTENSEN and ROGER CHRISTENSEN,**
        Defendants-Appellees.
_____


        Appeal from the Iowa District Court for Emmet County, Carl J. Petersen,

Judge.


        Plaintiffs appeal the district court's order granting summary judgment in

favor of defendants.  **AFFIRMED.**


        Michael J. Jacobsma of Jacobsma Law Firm, P.C., Orange City, for

appellants.

        Joel T. S. Greer of Bradshaw, Fowler, Proctor & Fairgrave, P.C.,

Marshalltown, for appellees.


        Heard by Bower, C.J., Vaitheswaran, J., and Mullins, S.J.*  Greer, J., takes

no part.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**VAITHESWARAN, Judge.**

Lee Christensen shot and killed Thomas Bortvit with a .45 caliber pistol. *See State v. Christensen*, 929 N.W.2d 646, 649–51 (Iowa 2019). A jury found Christensen guilty of second-degree murder. *Id.* at 649. The supreme court affirmed his conviction. *Id.* at 651.

Bortvit's parents and sister sued Christensen's uncle, Roger Christensen, and grandfather, Donald Christensen, alleging they owned or occupied the farm at which the shooting occurred and they "failed to take reasonable steps to prevent the use of [the] property for the purpose of firing loaded pistols by persons under the age of 21, unsupervised." They further alleged their actions or inactions constituted common law negligence and negligence per se.[1]

Roger and Donald moved for summary judgment. They asserted there was no relationship that created a duty to protect Thomas from the acts of Christensen, their actions or inactions were not within the scope of liability as to any harm to Thomas, and their "conduct was not a factual cause" of the harm to Thomas. The district court granted the motions. This appeal followed.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Our review is for correction of errors at law. *See Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016).

---

[1] Other defendants were dismissed or settled with the Bortvits.

A negligence claim requires proof of (1) the existence of a duty to exercise reasonable care, (2) breach of the duty of reasonable care, (3) factual cause and loss within the scope of liability, and (4) damages. *See Hoyt v. Gutterz Bowl & Lounge, L.L.C.*, 829 N.W.2d 772, 777-81 (Iowa 2013); *see also Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 850 (Iowa 2010); *Thompson v. Kaczinski*, 774 N.W.2d 829, 834, 837–39 (Iowa 2009); *Pangburn v. Rookies, Inc.*, No. 20-1353, 2021 WL 4890988, at *4 (Iowa Ct. App. Oct. 20, 2021).

The district court concluded Roger owed no duty to the Bortvits because he was not a possessor of the land but simply an employee of Donald, who owned the land. The court did not reach the remaining elements with respect to Roger. As for Donald, the court concluded the loss fell outside his scope of liability as a matter of law.

On appeal, the Bortvits argue Roger had an established duty to protect people on the farm and Roger breached the duty. They also assert the court improperly weighed the evidence with respect to both defendants. Roger and Donald respond by asking us to affirm the district court on the duty and scope-of-liability elements.

We elect to focus on the scope of liability. Although the district court did not cite the element with respect to Roger, Roger sought summary judgment on that issue, and we have authority to affirm on any ground raised by an appellee in the district court even if it was not the basis of the decision. *See Chicago Cent. & Pacific R. Co. v. Calhoun Cnty. Bd. Of Sup'rs*, 816 N.W.2d 367, 373 (Iowa 2012) (We may "affirm a trial court on any basis appearing in the record and urged by the prevailing party."); *see also State ex rel. Dickey v Besler*, 954 N.W.2d 425, 432

(Iowa 2021) (citing *St. Malachy Roman Catholic Congregation of Geneseo v. Ingram*, 841 N.W.2d 338, 351 n.9 (Iowa 2013) (stating we may affirm on any ground "raised below and reiterated in the briefing to this court")).

We recognize the scope of a defendant's liability has been characterized as fact-driven. *See Mitchell v. Cedar Rapids Cmty Sch. Dist.*, 832 N.W.2d 689, 699 (Iowa 2013) ("Scope-of-liability determinations are fact-intensive, requiring consideration of the risks that make an actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks."); *Hoyt*, 829 N.W.2d at 779–81 ("Where there are contending plausible characterizations of the range of reasonably foreseeable harms arising from the defendant's conduct leading to different outcomes and requiring the drawing of an arbitrary line, the case should be left to the judgment and common sense of the fact finder."); *Hill v. Damm*, 804 N.W.2d 95, 102–03 (Iowa Ct. App. 2011) (concluding the scope-of- liability element was for the jury). But the element has been decided as a matter of law. *See Asher v. OB-Gyn Specialists*, *P.C.*, 846 N.W.2d 492, 499 (Iowa 2014) (overruled on other grounds by *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016) ("The . . . injury was established as a matter of law to be within [the defendant's] scope of liability.").

"[T]o impose liability, something [the defendant] did or did not do must have increased the risk to [the plaintiff]." *Royal Indem.*, 786 N.W.2d at 851. The Bortvits concede neither Roger nor Donald gave Lee the .45 caliber pistol; Lee's father owned it and stored it in a digitally-locked gun safe at his home, accessible only by

him and by his son, Lee.[2] The Bortvits also concede Roger "never saw the .45 pistol being used" and "he didn't know who was shooting it." Their claim is premised entirely on the undisputed prior use of the farm for target shooting. In their view, "the subject of the illegal activity that Roger and Donald permitted to take place on the premises (unsupervised pistol shooting by underaged persons) should have imposed a greater foreseeability of the risk that harm would occur." But what harm should they have foreseen and to whom? *See Thompson*, 774 N.W.2d at 838 ("When . . . the court considers in advance of trial whether the plaintiff's harm is beyond the scope of liability as a matter of law, courts must initially consider all of the range of harms risked by the defendant's conduct that the jury could find as the basis for determining [the defendant's] conduct tortious. Then, the court can compare the plaintiff's harm with the range of harms risked by the defendant to determine whether a reasonable jury might find the former among the latter."). To reiterate, the factual cause of Thomas's death was not target shooting but Christensen's act of shooting him. *See Royal Indem.*, 786 N.W.2d at 851 ("It was the fire and the inability to put it out that caused the loss" rather than the absence of a "proper and competent inspection" of the premises into which the plaintiff moved.); *cf. Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 836–37 (Iowa 2019) (noting farm was used for target shooting among other activities and a loaded rifle left on a bed that was accidentally discharged, resulting in death was a dangerous condition). And the legal cause of Thomas's death was not target shooting but Lee's fixed purpose to use a deadly

---

[2] The Bortvits laid out these facts about the gun in their statement of facts in resistance to the defense motions.

weapon on his classmate. *See id.* at 852 ("[E]ven where an act may be a factual cause, . . . 'an act which merely places persons in the position where they sustain injury from an unrelated event is not for that reason a legal cause of the injury.'" (citation omitted)). Even if we were to assume Roger and Donald turned a blind eye to unsupervised underage target shooting on the farm, a reasonable juror would not assign the risk of a purposeful shooting of a stranger to the farm among the risks arising from the recreational activity. *See id.* ("FM was not an insurer against any calamity that might befall Deere's inventory but only for those events whose risk of occurrence was increased by FM's actions. Royal failed to prove that a condition or deficiency overlooked by FM in its inspection increased the risk of the loss that actually occurred. We hold that the loss to Deere's inventory was outside the scope of liability."); *Thompson*, 774 N.W.2d at 838 (stating the risk principle "is intended to prevent the unjustified imposition of liability by 'confining liability's scope to the reasons for holding the actor liable in the first place'").

We conclude the loss sustained by the Bortvits was outside Roger Christensen's and Donald Christensen's scope of liability as a matter of law. Accordingly, the district court did not err in granting the Christensens' summary judgment motions.

**AFFIRMED.**