# IN THE COURT OF APPEALS OF IOWA

No. 22-0038
Filed November 2, 2022

**WILLIAM LEE PITZ and LYNN S. PITZ,**
  Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**UNITED STATES CELLULAR OPERATING COMPANY OF DUBUQUE,**
  Defendant-Appellee/Cross-Appellant.
_____

  Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.


  William and Lynn Pitz appeal the ruling on their petition for declaratory judgment while United States Cellular Operating Company of Dubuque cross-appeals the denial of its request for attorney fees.  **AFFIRMED ON BOTH APPEALS.**


  Todd J. Locher of Locher & Davis PLC, Farley, for appellants.

  Bret A. Dublinske and Brandon R. Underwood of Fredrikson & Byron, P.A., Des Moines, for appellee.


  Heard by Schumacher, P.J., Chicchelly, J., and Gamble, S.J.*

  *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**GAMBLE, Senior Judge.**

This case involves an option to renew a lease on land containing a cellular telecommunication tower. William and Lynn Pitz (the Pitzes) appeal the ruling on their petition for declaratory judgment requesting, among other things, a declaration that United States Cellular Operating Company of Dubuque (US Cellular) did not exercise a valid option to renew the lease. US Cellular cross-appeals the denial of its request for attorney fees. We affirm on appeal and cross-appeal.

## I. Background Facts and Prior Proceedings

On November 14, 1988, William's parents, Robert and Dorothy Pitz, entered into a lease, leasing a portion of their farmland to US Cellular. US Cellular was to build a telecommunications tower on the property. The lease lasted thirty years (terminating on November 13, 2018) and included an option to renew for one additional term of thirty years. If US Cellular wanted to exercise the option, the lease required it to give written notice at least sixty days prior to expiration of the original lease term.

On April 14, 2009, Robert and Dorothy transferred their farmland, including the portion leased to US Cellular, to the Pitzes. No one informed US Cellular of the property transfer.

Assuming Robert and Dorothy still owned the farmland, US Cellular sent a letter to them on September 1, 2017, notifying them it was exercising its option to renew the lease. Of note, the letter stated Dubuque Cellular Telephone, L.P. (DCT) was exercising the option contained in the original lease, and the letter was on the US Cellular letterhead and included supporting documents identifying US

Cellular. William received the letter from one of his parents. However, William did nothing in response to the letter.

Once US Cellular discovered the Pitzes purchased the farmland from Robert and Dorothy, it sent a letter dated September 11, 2018, to William informing him it exercised its option to renew by way of the September 2017 letter and needed him to supply it with a recorded copy of the deed, a W-9 form, a direct deposit form, and contact information for the new owners. The letter stated once US Cellular had the required information, it could make the rental payment. Once again, William did nothing in response to the letter.

Because US Cellular never received a W-9 form or direct deposit information, it sent the Pitzes a rent check for the full amount less tax withholdings. In response, an attorney for the Pitzes informed US Cellular that the Pitzes believed US Cellular did not properly exercise its option to renew and returned the rent check. US Cellular responded by claiming the option was properly exercised and issued the Pitzes a 1099-MISC tax form documenting the rental income from US Cellular as miscellaneous income.

The Pitzes then initiated this action seeking declaratory judgment that US Cellular failed to validly exercise its option to renew the lease because it did not pay the full amount of the rent due at the time it exercised the option; it incorrectly provided notice to Robert and Dorothy Pitz; and DCT was not the proper party to exercise the option. The Pitzes also sought declaratory judgment that the lease expired on November 13, 2018; that US Cellular be ordered to remove all structures from their land; to establish fair rent for the period from November 13,

2018, to the date of removal; that US Cellular issue an updated 1099-MISC form; and that they are entitled to court costs, attorney fees, and interest.

Following a bench trial, the district court determined US Cellular properly exercised its option to renew the lease because its written notice was not defective and payment of the rent due was not a condition precedent to the renewal option. The court denied "[a]ll associated claims for relief" and dismissed the action. After the court issued its ruling, US Cellular filed a motion for costs ($1300.27) and attorney fees ($38,303.00). The court determined US Cellular was required to "specifically plead that it was seeking attorney fees" and that "attorney fees are not recoverable even if [US Cellular] was not required to specifically plead the relief."

The Pitzes appeal, and US Cellular cross-appeals.

## II. Standard of Review

"Because a lease is a contract, we apply ordinary contract principles to determine its meaning and legal effect." *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014). "[O]ur review of the district court's contract interpretation and construction is at law." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020). "The district court's factual findings have the effect of a special verdict and are binding on us if supported by substantial evidence." *Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019).

As to our review of the district court's denial of attorney fees, we review for an abuse of discretion. *Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 832 (Iowa 2009). "Reversal is warranted only when the court rests its discretionary ruling on grounds

that are clearly unreasonable or untenable." *Id.* (quoting *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000)).

## III. Discussion

### A. Direct Appeal

We begin with the Pitzes' claims on appeal. First, they argue US Cellular failed to timely renew the lease because it did not provide the rent payment with the notice of renewal. Because US Cellular did not pay the rent at the time of the renewal notice, if payment of the rent amounted to a condition precedent to the renewal option, then US Cellular's renewal notice did not transform the option into a contract. *SDG Macerich Props., L.P. v. Stanek Inc.*, 648 N.W.2d 581, 586 (Iowa 2002) ("Any conditions precedent to the option provision must be fulfilled according to the agreement for the option to become a contract between the parties.").

At its heart, this case presents a simple contract dispute. So we look to the terms of the lease to determine if US Cellular was required to pay rent in tandem with its renewal notice to trigger the renewal option. *See Manatt v. Manatt*, No. 21-0319, 2022 WL 1232226, at *6 (Iowa Ct. App. Apr. 27, 2022). Section 3.2 of the lease provided:

> Option to Renew. Lessee shall have the option to renew this Lease Agreement for one (1) additional term of thirty (30) years, at the rental rate set forth in Article Four and upon all the other terms and conditions hereof. *Lessee may exercise such option by giving written notice to Lessor at least sixty (60) days before the expiration of the initial term of this Lease Agreement.*

(Emphasis added.) Section 4.2 provided:

> Option Term Rent. Lessee shall pay to Lessor as full consideration for use of the Leased Premises during the option term, *payable in a lump sum in advance at the exercise of the option*, the amount of Twenty Thousand Dollars ($20,000.00), adjusted upward

by the percentage of increase in the Consumer Price Index ("CPI") from the Commencement Date to the first day of the last month of the current lease term.  For purposes of the Lease Agreement, the "Consumer Price Index" shall mean the Consumer Price Index-Urban Wage Earners and Clerical Workers, U.S. City Average, All Items (1982-1984 equals 100) published by the United States Department of Labor, Bureau of Labor Statistics, for the month preceding the Commencement Date or Adjustment Date (as the case may be).  If the amount of the CPI increase is not known at the time the option is exercised, Lessee shall pay Lessor Twenty Thousand Dollars ($20,000.00) at the time of exercise and the balance of the option term rent within thirty (30) days of the Lessor's notice of calculation.  If the CPI shall become unavailable, then a reasonably comparable index of the increase and decrease in United States consumer prices shall be substituted in its place.  Notwithstanding the foregoing, the CPI adjustment shall never exceed more than 5% per lease year, cumulatively.

(Emphasis added.)

The Pitzes highlight that we interpret contracts as a whole and in a manner that gives reasonable, lawful, and effective meaning to each provision of the contract.  *Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991).  US Cellular's attorney agreed with this proposition at oral argument.  But the parties' agreement ends there.  The Pitzes assert that—when giving full meaning to the terms of the contract—for US Cellular "to exercise its option[,] it was required to give the Pitzes notice of its intent to renew in writing on or before September 14, 2018[,] *and* 'pay to Lessor as full consideration for the use of the Leased Premises during the option term payable in a lump sum in advance at the exercise of the option.'"  (Emphasis added.)  US Cellular counters there is no conjunction between sections 3.2 and 4.2 and highlights the "Option Term Rent" requirements are contained in a "separate provision, under a different heading, in a distinct article, on another page" of the lease from the "Option to Renew" requirements.  *Cf. Lyon v. Willie*, 288 N.W.2d 884, 888–89 (Iowa 1980)

(concluding payment was a condition precent to a renewal contract because the payment provision of the contract was linked to the notice requirement with a conjunctive "and"). We agree with US Cellular that the lack of conjunctive language between the sections is telling, and we do not think we are required to read an implicit conjunction between the sections in order to give full meaning to the lease.

Ultimately, the district court correctly determined payment of the rent was not a condition precedent to renewal of the lease. Section 3.2 specifically stated the option would be exercised "*by giving written notice* to Lessor at least sixty (60) days before the expiration of the initial term of this Lease Agreement." (Emphasis added.) "It may be that under the terms of a given option the only proper and binding method of election or acceptance is by the payment or a tender of the purchase price." *Breen v. Mayne*, 118 N.W. 441, 443 (Iowa 1908). But by the plain language of this particular lease, there is no requirement that US Cellular also pay the rent at the same time to effectuate the renewal option. *Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011) ("The most important evidence of the parties' intentions at the time of contracting is the words of the contract.").

We understand section 4.2 of the contract required the rent to be "payable in a lump sum in advance at the exercise of the option." However, this does not create a condition precedent. Instead, it clarifies the time that the rent payment is due, i.e., it must be made upon exercise of the option. So it created an obligation of performance once the option to renew was exercised. It also specified this contract required a lump sum rental payment instead of the common practice of monthly installments and that the payment would come at the beginning of the

lease as opposed to the end.[1]  It does not tack on a condition to the renewal terms, which are contained in an entirely different section of the lease.

Next, the Pitzes argue the renewal was defective because it was exercised by the wrong party.  They complain the renewal notices reference DCT as the party attempting to exercise the renewal option, not US Cellular.  And they point out article thirteen of the lease required any assignment of US Cellular's rights under the contract be made by written assignment and notice be provided to the lessors, which did not occur here.

But looking at the documents sent, both on September 1, 2017, and September 11, 2018, it is clear DCT was exercising the renewal option on behalf of US Cellular.  Below are images of some of the paperwork sent.[2]



---

[1] For example, the Pitzes' expert witness testified he reviewed similar contracts that included monthly rental terms, and a US Cellular representative also testified that this contract is unique because it requires rent payment in a lump sum as opposed to monthly installments.  *Peak*, 799 N.W.2d at 544 (permitting us to look to extrinsic evidence including the subject matter of the transaction when interpreting the terms of a contract).

[2] We have redacted addresses referenced in the documents.



## VENDOR ACH / CTX SET-UP FORM

### Vendor Information

| | | |
|---|---|---|
| Existing Vendor | Yes ☐ | Vendor Number: _____ |
| TAX ID | FEIN / Tax ID or SS# if sole proprietor: | _____ |
| Company Name: | _____ | |
| Attention: | _____ | |
| Address: | _____ | |
| City: | _____ | |
| State: | Zip: | |

**U.S. Cellular**

September 11, 2018

William Pitz
c/o Robert & Dorothy Pitz

████████████████████████

VIA OVERNIGHT MAIL:

Re:     Farley

████████████████████

To Whom It May Concern:

Pursuant to our phone conversation on September 06, 2018 notifying us that you have purchased the property from your parents Robert & Dorothy Pitz, please note that we are still need of the following documents to reflect this change of ownership and update the rent payee in our system.

Recorded copy of deed
W-9 Form (Attached)
Direct Deposit form (Attached)
Contact information of New Owners

Dubuque Cellular Telephone, L.P. has renewed the Lease agreement dated November 14, 1988 as per section 3.2 of the Lease. Copy of Acknowledged Renewal letter dated September 01, 2017 is attached. Once we have these documents, we will be able to disburse the option renewal payment to you. This letter is being sent to the last address on record.

These communications also came with return envelopes addressed to U.S. Cellular.



**U.S. Cellular**
8410 W. Bryn Mawr Ave
Chicago, IL 60631



neopost
09/06/2017
US POSTAGE   $00.46⁰·

ZIP 60440
041L11221364

U.S.Cellular
████████████████
Chicago, IL 60631

Contrary to the Pitzes' assertions, this is not an instance of US Cellular improperly assigning its rights to a third party. Instead, it's a case of US Cellular exercising its option to renew through DCT. US Cellular's representative testified, "United States Cellular Corporation is the owner of United States Cellular Operating Company of Dubuque who in town is the Dubuque Cellular, LP." The Pitzes understood this. William testified at trial that he made no distinction between DCT and US Cellular because US Cellular was clearly identified on the paperwork. And it is clear from the record that US Cellular was intending to exercise its option to renew—that is all we require. *See Figge v. Clark*, 174 N.W.2d 432, 436 (Iowa 1970) ("[I]n this jurisdiction anything amounting to an unqualified manifestation of an optionee's determination to accept is sufficient.").

So we conclude US Cellular exercised its option to renew the contract and there is a valid contract between the parties. Accordingly, the Pitzes' claims that they are entitled to fair market value for a holdover period and US Cellular should issue a new 1099-MISC form are moot.

With respect to their claim for attorney fees, they point to the indemnification clause as the basis for their claim.[3] That provision states:

> Lessee shall indemnify and hold harmless Lessor herein from any and all costs, claims, damages and suits arising out of or resulting from or in connection with Lessee's or Lessee's employees', agents', invitees', sub-lessees' or assignees' occupancy, possession, use or management of the Leased Premises and the License areas of the Real Estate or any portion thereof or the exercise or enjoyment of their rights and breach of their

---

[3] US Cellular argues the Pitzes' request for attorney fees is not preserved because the court did not explicitly rule on it. But the court did state, "All associated claims for relief are denied." We think this is minimally sufficient to show the court considered the Pitzes' request for attorney fees contained in their petition and denied it. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012).

obligations under this Lease Agreement, including reasonable attorneys' fees.

Lessor shall indemnify and hold harmless Lessee herein from any and all costs, claims, damages and suits arising out of or resulting from or in connection with Lessor's or Lessor's employees', agents', invitees', sub-lessees' or assignees' occupancy, possession, use or management of the Leased Premises and the License areas of the Real Estate or any portion thereof or the exercise or enjoyment of their rights and breach of their obligations under this Lease Agreement, including reasonable attorneys' fees.

However, that section does not provide for recovery of attorney fees in actions between the parties. *See NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 471 (Iowa 2010) ("In Iowa, we have held an indemnification clause that uses the terms 'indemnify' and 'hold harmless' indicates an intent by the parties to protect a party from claims made by third parties rather than those brought by a party to the contract. Therefore, a party to a contract cannot use an indemnity clause to shift attorney fees between the parties unless the language of the clause shows an intent to clearly and unambiguously shift the fees." (internal citation omitted)).

### B. Cross-Appeal

Next, we address US Cellular's cross-appeal claiming it is entitled to attorney fees. Because US Cellular did not specifically plead for attorney fees prior to the court's ruling, it cannot recover. This court previously explained, "We can find no reason to separate attorney fees from other kinds of special damages or to establish separate rules allowing them to be raised after the trial." *Nelson Cabinets, Inc. v. Peiffer*, 542 N.W.2d 570, 573 (Iowa Ct. App. 1995).

Moreover, US Cellular would not be entitled to attorney fees even if it had specifically pleaded for attorney fees at the proper time. "Generally, attorney fees

are recoverable only by statute or under a contract." *NCJC, Inc. v. WMG, L.C.*, 960 N.W.2d 58, 62 (Iowa 2021) (citation omitted). US Cellular points to no statute in support of its request for attorney fees; instead, it points to article nine of the contract. This provision of the contract is the same indemnification clause we determined could not provide the Pitzes with attorney fees. Likewise, it does not provide US Cellular with the ability to recover attorney fees in this instance. *See NevadaCare*, 783 N.W.2d at 471.

## IV. Conclusion

We find no error of law in the ruling of the district court. Payment of the rent was not a condition precedent to the renewal option, and US Cellular's renewal notice was not defective. So there is a valid contract between the Pitzes and US Cellular. And the district court did not abuse its discretion in determining neither party is entitled to attorney fees.

**AFFIRMED ON BOTH APPEALS.**