# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-2000
Filed January 7, 2026

———————————

**Lounsbury & Lounsbury, an Iowa Partnership, d/b/a Lounsbury Landscaping, Sand & Gravel,**
Plaintiff–Appellee,

v.

**Garry Lee Mattix Jr.,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Lawrence P. McLellan, Judge.

———————————

**AFFIRMED**

———————————

Billy J. Mallory and Trevor A. Jordison of Mallory Law, Urbandale,
attorneys for appellant.

William P. Lounsbury, West Des Moines, attorney for appellee.

———————————

Considered without oral argument
by Tabor, C.J., and Ahlers and Langholz, JJ.
Opinion by Ahlers, J.

1

**AHLERS, Judge.**

Lounsbury and Lounsbury is a landscaping business. One aspect of its business is selling sand, gravel, topsoil, and other landscaping materials. Garry Mattix Jr. ran a trucking business. As part of that business, Mattix bought landscaping materials from Lounsbury. When Mattix failed to pay for those materials, Lounsbury brought this collection action against Mattix. Mattix defended, primarily by claiming the outstanding debt to Lounsbury was owed by a limited liability company (LLC) he owned rather than by Mattix personally. Following a bench trial, the district court ruled in Lounsbury's favor and entered judgment against Mattix for the amount claimed, plus interest and costs.

Mattix appeals. He contends the district court erred in three ways: (1) by finding him personally liable for the debt; (2) by permitting Lounsbury to unilaterally modify the credit agreement; and (3) by considering a course of dealing as changing the terms of the credit agreement.

## I.      Standard of Review

We review a district court's judgment in a nonjury case for correction of errors at law. *Metro. Prop. and Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019). In nonjury cases, the district court's fact findings have the effect of a special verdict and are binding if supported by substantial evidence. *Id.* Substantial evidence exists if "a reasonable mind would accept it as adequate to reach a conclusion." *Lucas v. Warhol*, 23 N.W.3d 19, 26 (Iowa 2025) (quoting *Crall v. Davis*, 714 N.W.2d 616, 619 (Iowa 2006)).

## II.    Analysis

We address each of Mattix's challenges in turn.

### A.    Mattix's Personal Liability

The relationship between Lounsbury and Mattix started in May 2008 when Mattix personally submitted a credit application to Lounsbury. Lounsbury accepted the application, and Mattix began purchasing goods from Lounsbury pursuant to their agreement.  About one and one-half months later, Mattix formed a limited liability company (LLC).  Mattix contends that the LLC is liable for all purchases made after the LLC was formed, including those made in 2021 and 2022 upon which this suit is based.

Mattix's argument is based entirely on the premise that the LLC is the party to the credit agreement.  But this is refuted by the credit application. Although the application references "GNA Trucking" (with no reference to an LLC), Mattix was given the option of submitting the application as an individual, partnership, or corporation.  Mattix chose to submit the application as an individual.  Plus, in the space provided for the applicant's federal tax identification number, Mattix provided his social security number. On its face, the credit application was submitted by Mattix as a sole proprietorship doing business as "GNA Trucking."  And there is no evidence that Lounsbury was informed when Mattix created the LLC or that Lounsbury thought it was selling materials to anyone other than Mattix as a sole proprietor doing business as GNA Trucking.

The conclusion that Lounsbury did not know it was purportedly dealing with an LLC is supported by the invoices it sent to Mattix.  Those invoices were addressed to "GNA Trucking"—the name Mattix gave for the sole proprietorship when he submitted the credit application—with no

reference to an LLC. And, when Mattix was asked at trial what would tell Lounsbury that it was doing business with anyone other than Mattix personally, Mattix responded, "Good question." It is a good question. But it is also one for which Mattix had no answer. The evidence is clear that Lounsbury supplied materials to Mattix with the understanding—consistent with the information provided on the credit application Mattix submitted—that it was dealing with Mattix as a sole proprietor.

In essence, Mattix argues he was an agent for an LLC that he created after he reached the agreement for the extension of credit with Lounsbury. Besides the fact that the LLC did not exist when the agreement was reached, the evidence does not show that Mattix disclosed the existence of the LLC to Lounsbury such that Lounsbury knew that it was dealing with the LLC rather than the sole proprietorship being operated by Mattix. If Mattix was acting as an agent for his LLC, as he now seems to claim, his failure to disclose the agency relationship defeats his claim. This is because "an agent who enters into a contract or purchases merchandise from another without disclosing his principal is held personally liable for it." *Alsco Iowa, Inc. v. Jackson*, 118 N.W.2d 565, 567 (Iowa 1962).

Mattix's contention that his LLC—rather than Mattix personally—is liable for the debt owed to Lounsbury is defeated by the terms of the credit application and by Mattix's failure to disclose to Lounsbury the existence of the LLC. Mattix is personally liable for the debt.

### B. Claimed Modification of the Credit Agreement

Next, Mattix argues Lounsbury unilaterally modified the terms of the credit application he signed by (1) extending credit for more than the $3,000

requested in the application; and (2) not enforcing the "cash on delivery" requirement once the account became past due. We reject both arguments.

As to the first argument, the district court found that the reference to $3,000 in the credit application "does not limit the credit amount to $3,000" but "was simply the amount Mattix requested initially." Its finding was based on the plain language of the application, which asked for the "[a]mount of credit requested." Mattix wrote in "3,000." Therefore, the court's finding is supported by substantial evidence. There is no evidence that the parties agreed to a credit limit. As such, there was no modification of the agreement by Lounsbury, and Mattix's claim to the contrary fails.

As to the second argument, we decline to address it because Mattix did not preserve error for our review.[1] Although it is not clear whether Mattix raised this issue at trial, even assuming he did, the district court did not rule on it. Given the district court's failure to address the issue, Mattix was required to file a motion—pursuant to Iowa Rule of Civil Procedure 1.904(2) or otherwise—calling that failure to the court's attention to preserve error. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal."). Mattix did not file such a motion, so the issue is not preserved for our review on appeal.

### C.    Course of Dealing Changing Terms of Credit Agreement

---

[1] It is not clear whether Lounsbury's claims that Mattix failed to preserve error on various issues covers this issue. But, even if Lounsbury did not claim Mattix failed to preserve error on this issue, we independently consider whether error was preserved. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

Finally, Mattix attempts to advance his arguments addressed in the prior subsection of this opinion—that Lounsbury exceeded the "credit limit" of $3,000 and failed to enforce the "cash on delivery" requirement once the account became delinquent—from a different angle. He repackages those arguments to assert that Mattix could not waive those terms of the credit agreement because he was not a party to the agreement.

We question whether error is preserved on this claim. But, even if it were, the claim fails because it is built on a faulty premise. Mattix's claim is based on the assertion that the original credit agreement was between GNA Trucking and Lounsbury, and Mattix was only a guarantor of GNA Trucking's debt. But, as previously discussed, Mattix was the party to the original credit agreement as a sole proprietorship doing business as GNA Trucking. GNA Trucking was not a separate legal entity at that time. *See* 5 Matthew Doré, *Iowa Practice Series: Business Organizations* § 1:4 (November 2025) ("A sole proprietorship is a business owned and operated by one person. Since that person owns and operates the business in the person's individual capacity, the sole proprietorship is not, technically speaking, a business 'organization,' 'association,' or 'entity' that exists separately from the owner. Indeed, in the eyes of the law, the sole proprietorship is nothing more than an extension of the owner."). And, as previously discussed, Mattix never informed Lounsbury when he formed the LLC. As such, Mattix was a party to the credit agreement. And, as Mattix's repackaged arguments are based entirely on his faulty claim that he was not a party, his repackaged arguments fail.

## III. Conclusion

Based on the terms of the credit agreement and Mattix's failure to inform Lounsbury of the formation of an LLC, Mattix is personally liable for

the goods purchased in pursuit of his business. There was no improper modification of the agreement by extending more than $3,000 in credit, as $3,000 was only the initial requested amount of credit, not an agreed-upon credit limit. And, because Mattix was a party to the credit agreement, his arguments based on him not being a party fail. Accordingly, we affirm.

**AFFIRMED.**